[No. 26726-4-I. Division One. February 3, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. LLOYD H. MCNALLIE, *Appellant*.

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *MacDuffie Setter, Deputy,* for respondent.

FORREST, J. — Lloyd McNallie (McNallie) appeals his convictions for communication with a minor for immoral pur-

poses and indecent exposure claiming: (1) a 1977 guilty plea may not be considered to raise the current offense to a felony, (2) the court erred in failing to instruct the jury on the definition of "immoral purposes", and (3) prosecutorial misconduct deprived him of a fair trial.[1] We affirm.

Three young girls, E.A., C.L.1, and C.L.2 (ages 11, 11, and 10 at trial), were walking together toward their apartment building. A car drove by the girls, then turned around and parked near their building. McNallie was the driver of the car.

McNallie called the girls over to the car. McNallie asked the girls if they knew anyone in the apartment building who gave "hand jobs". He then asked the girls if they knew what that was and then explained what it was. Apparently C.L.2 left the conversation for a short period. While their testimony was a bit confused, E.A. and C.L.1 testified that McNallie told them they could earn money by giving him a "hand job". C.L.2 returned to the conversation as McNallie told the girls what a "hand job" was and boosted himself up in the window of the car and demonstrated a "hand job". E.A. provided a detailed description of McNallie's penis and his manipulation of it.

The girls became scared and ran to a neighbor for help. McNallie drove away from the area. The children, the neighbor and E.A.'s mother followed McNallie until they got his license number. The police traced the license to McNallie's father and determined that the defendant used the car that day.

McNallie did not testify at trial, but his version of the events was testified to by a police officer who interviewed McNallie. McNallie did not dispute that he was the driver of the car or that he talked to the girls about "hand jobs" or that he demonstrated what one was. He claims he was merely looking for a massage parlor he believed was located at the apartment building. He claims the girls approached

---

[1]McNallie was also convicted of one count of indecent exposure which is not challenged in this appeal.

him and he asked them if they knew where he could get a "hand job" in the apartment building. He said he asked the girls if they knew what that was, they said no and they persisted in asking him to explain what it was. He claims he never offered the girls money for a "hand job" but told the girls that "you can get ten, twenty, fifteen dollars for a hand job or they charge or you pay ten, fifteen, twenty dollars for a hand job". He claims he did not expose his penis, but used an artificial phallus he had with him.[2]

McNallie moved to amend the information to reduce the charges of communication with a minor from felonies to misdemeanors. In this motion McNallie claimed a 1977 guilty plea was invalid and could not be used to enhance the current charge. The motion was denied. The court rejected McNallie's proposed jury instruction defining "immoral purposes". The court also denied McNallie's motion for a new trial based on prosecutorial misconduct.

The jury found McNallie guilty of communication with a minor for immoral purposes as to E.A. and C.L.1, but not guilty as to C.L.2. McNallie appeals.

### ENHANCEMENT BY REASON OF PRIOR CONVICTION

McNallie was charged with communication with a minor for immoral purposes, which is a gross misdemeanor unless the defendant has previously been convicted for a similar offense, in which case it is a class C felony.[3] He contends the State failed to establish the validity of his 1977 guilty plea to indecent liberties and that consequently even if his conviction is affirmed, the case must be remanded for resen-

---

[2]At trial the girls denied seeing the device.

[3]RCW 9.68A.090 provides:
"**Communication with minor for immoral purposes.** A person who communicates with a minor for immoral purposes is guilty of a gross misdemeanor, unless that person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A, 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state, in which case the person is guilty of a class C felony punishable under chapter 9A.20 RCW."

tencing as a gross misdemeanor instead of a felony.[4] We disagree.

■ ■ McNallie relies on the rule that where a prior conviction is an essential element of a current offense, the State must prove beyond a reasonable doubt that the prior conviction was constitutionally valid.[5] In *State v. Ammons*[6] the rule was limited to charges of being a "habitual criminal" or "felon in possession of a firearm" and held not to apply to prior convictions used to establish a defendant's criminal history and his sentencing range. The reason for classifying this crime a class C felony is precisely the same, to increase the sentence range from that of a gross misdemeanor to that of a felony and, hence, the *Ammons* rule applies. This situation is analogous to the law regarding criminal escape. There are two degrees of the crime of escape. The first degree crime involves escape while in custody for a *conviction*, which is a class B felony. The second is escape from custody while *charged*, which is a class C felony. The "elements" of escape from custody are the same, however, only the classification is enhanced depending on a

---

[4]At the pretrial hearing the defendant urged that the prior conviction was not an element, contrary to the position taken on appeal, in an effort to keep the prior conviction from the jury. The State persuasively argued that the statute made the conviction an element which must be found by the jury to establish a felony conviction. The 1977 conviction would not otherwise be admissible at trial. It is plainly prejudicial to the defendant to have the jury advised of his conviction of the prior crime. The court and counsel commendably resolved the dilemma by stipulation that the conviction would not be communicated to the jury but that the defendant, if found guilty, would be sentenced for a felony and not a gross misdemeanor. It would seem desirable, however, to specifically remove the conviction as an element of the offense to be proved to the jury and make it solely a sentencing factor.

[5]*See State v. Holsworth*, 93 Wn.2d 148, 607 P.2d 845 (1980) (defendant charged as a "habitual criminal"); *State v. Swindell*, 93 Wn.2d 192, 607 P.2d 852 (1980) (defendant charged as a "felon" in possession of a firearm); *State v. Ponce*, 93 Wn.2d 533, 611 P.2d 407 (1980) (defendant charged as habitual traffic offender).

[6]105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986).

prior conviction. In this circumstance the courts do not require the State to prove the validity of the prior conviction.[7]

In those circumstances where the State need not prove the validity of the prior conviction beyond a reasonable doubt, the conviction need only be facially valid.[8] The failure of the guilty plea form to include a waiver of the defendant's right to remain silent does not render the conviction facially invalid.[9] Therefore, McNallie's prior conviction was properly used to enhance the crime. In any event, in this case the trial court conducted a hearing, examined the record which led to the guilty plea, and determined that McNallie voluntarily waived his right to remain silent. The court did not err. The record of the guilty plea proceeding clearly established that McNallie was expressly advised of his right to remain silent, he acknowledged that he heard and understood the right and was told that if he pleaded guilty he would not have that right. We find the fact that the trial court did not use the technically correct language, "do you waive this right" to be insignificant. McNallie had prior discussions with his attorney and was represented by his attorney at the time the plea was entered. We are satisfied beyond a reasonable doubt that McNallie pleaded guilty knowing that if he went to trial, he had a right to remain silent.

## INSTRUCTION ISSUE

McNallie assigns error to the court's rejection of his proposed instruction,[10] the significant portion of which offered a limiting definition of the term communication for "immoral

---

[7]*See State v. Gonzales*, 103 Wn.2d 564, 693 P.2d 119 (1985).

[8]*See Ammons*, at 187-88.

[9]*In re Harris*, 111 Wn.2d 691, 697, 763 P.2d 823 (1988), *cert. denied*, 490 U.S. 1075 (1989); *Ammons*, at 189.

[10]The proposed instruction reads:

"A person commits the crime of Communication With A Minor for Immoral Purposes when that person communicates a desire to:

purposes" to mean communication to convey a desire to "have the minor engage in sexual conduct for a fee". The court, after considerable discussion with counsel, gave a substantially broader instruction saying that the communication had to be for "immoral purposes of a sexual nature".[11] We agree with McNallie that it was error to reject the proposed instruction.

■ *State v. Danforth*[12] is controlling. The statutory language, "communicates with a minor for immoral purposes" without further definition is too vague to pass constitutional muster.[13] *Danforth* holds that the language limited by the context of RCW 9.68A, where it is located, provides persons of common intelligence and understanding with fair notice of ascertainable standards of conduct. Accordingly, communication for immoral purposes is limited to conduct prohibited by RCW 9.68A as to sexual exploitation and abuse of children and the patronizing of a juvenile prostitute. If not so limited, it would be unconstitutionally vague.[14]

The State's reliance on *State v. Schimmelpfennig*[15] is misplaced. It is true that in *Schimmelpfennig* the court gave the identical language a broader construction than the *Dan-*

---

"1. Have the minor engage in sexually explicit conduct which will be photographed or made a part of a live performance; or
"2. Have the minor engage in sexual conduct for a fee.
"Communication may be by words or conduct."

[11]Instruction 7 reads:
"A person commits the crime of Communication for Immoral Purposes when that person communicates with a child under eighteen years of age for immoral purposes of a sexual nature.
"Communication may be by words or conduct."

[12]56 Wn. App. 133, 136, 782 P.2d 1091 (1989). The court noted "[t]he phrase 'immoral purposes' would be too vague under constitutional standards if it were read in a vacuum."

[13]*State v. Carter*, 89 Wn.2d 236, 570 P.2d 1218 (1977) ; *State v. Schimmelpfennig*, 92 Wn.2d 95, 594 P.2d 442 (1979); *Danforth*, at 136.

[14]*Danforth*, at 136.

[15]92 Wn.2d 95, 594 P.2d 442 (1979).

*forth* court, holding that when the communication is limited to immoral purposes of "sexual conduct" it met constitutional standards. While the language "communicates with a minor for immoral purposes" is the same, the *context* of the language is significantly different and requires a different interpretation. At the time *Schimmelpfennig* was decided, the language was contained in RCW 9A.88 and was the second section in a chapter enumerating and defining sexual crimes against children such as indecent liberties. Relying on this context, the court held that the immoral purposes were those purposes proscribed by the other sections of the statute. Now that the language is found in RCW 9.68A the same reasoning which yielded a broader meaning in *Schimmelpfennig* requires the narrower reading set forth in *Danforth*.[16] McNallie's requested instruction fairly sets forth the holding of *Danforth* and it was therefore error for the court to reject it.[17]

The defendant was charged and convicted for a violation of RCW 9.68A.090 (communicating with a minor for immoral purposes). Although the defendant urged a narrow definition of immoral purposes based on RCW 9.68A.100 (patronizing a juvenile prostitute), and the State urged the broader definition accepted by the court, both parties assumed that communications for the purposes of RCW 9.68A.100[18] constitute a violation of RCW 9.68A.090. Since

---

[16]We note that in *State v. Falco*, 59 Wn. App. 354, 796 P.2d 796 (1990) the court referred to the *Schimmelpfennig* definition of "immoral purposes" without reference to the *Danforth* holding. However, the issue in *Falco* was that communication for immoral purposes could be by *conduct* as well as by words, not what acts would constitute immoral purposes. This aspect of the *Schimmelpfennig* holding is unaffected by *Danforth*; accordingly, *Falco* is not inconsistent with our interpretation.

[17]If the Legislature intends "immoral purposes" to have the broader meaning found in *Schimmelpfennig* it would be necessary to move RCW 9.68A.090 to RCW 9A.44 where the former indecent liberties offense, now child molestation, is located or otherwise define "immoral purposes".

[18]"A person is guilty of patronizing a juvenile prostitute if that person engages or agrees or offers to engage in sexual conduct with a minor in return for a fee, and is guilty of a class C felony punishable under chapter 9A.20 RCW."

no error was assigned and no argument directed to this aspect of the relationship between the two sections, we need not address the issue.[19]

### HARMLESS ERROR

■ Does the refusal to give McNallie's requested instruction require reversal? Even a manifest constitutional error may be found harmless if the appellate court is convinced beyond a reasonable doubt that the jury would have reached the same result in the absence of the error.[20] Although more commonly applied to cases of evidentiary error, the rule is equally applicable to instructional error.[21] This is such a case.

■ The basic test of the adequacy of the instructions is that they permit each party to argue his theory of the case.[22] The instruction given in this case permitted the defendant to argue his theory that his conversations with the victims were only inquiries and not a request for them to engage in sexual acts. Defense counsel made exactly that argument. Indeed, the prosecutor expressly agreed, "If you find the defendant was asking for directions then you would find him not guilty of those three charges." However, the jurors were instructed that they must take the law from the instructions and not from the argument of counsel.[23] Accord-

---

[19]We do note, however, a possible overlap between RCW 9.68A.100 and RCW 9.68A.090 when the communication includes an offer of money. Additionally, we note that read literally RCW 9.68A.100 would mean that the "person" who is plainly the ultimate defendant who performs certain acts ("engages or agrees or offers to engage") is the one who is to receive the "fee" rather than the juvenile. In short, the defendant gets the fee, not the juvenile. Such a literal reading is clearly at odds with the title and with the apparent intent of the Legislature.

[20]*State v. Hoffman*, 116 Wn.2d 51, 97, 804 P.2d 577 (1991).

[21]*Hoffman*, at 97; *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984).

[22]*State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986); *State v. Amezola*, 49 Wn. App. 78, 87, 741 P.2d 1024 (1987).

[23]Instruction 1 reads in pertinent part:
"Counsel's remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence, however,

ingly, we must determine whether the failure to properly instruct was prejudicial.

The material portion of the to-convict instruction requested by McNallie is that the jury needed to find the defendant communicated a desire to "have the minor engage in sexual conduct for a fee". There could be other communications, "for immoral purposes of a sexual nature" as stated in instruction 7 that are not proscribed by the statute as construed in *Danforth*. Normally, the risk that the jury might convict on the basis of conduct that does not constitute a crime would require reversal. However, in this case we are satisfied the jury, with the guidance of counsel, made the precise distinction in its verdicts that the correct instruction would have required. They convicted on two counts and acquitted on one. The crucial difference in the testimony between the victims for which the jury convicted and the victim for which the jury did not convict was that in the acquittal there was no testimony as to the offering of the money to the victim to perform sexual acts. We are satisfied beyond a reasonable doubt that if the requested instruction had been given, the jury would have returned exactly the same verdicts.

The prosecutor also argued that the conversation and money talk might have been for the purpose of detaining the victims so he could do the flashing which was the subject of the indecent exposure charges. If the jury accepted this argument, it would not have discriminated between the three victims, hence, the absence of the instruction did no harm.

## MOTION FOR MISTRIAL

McNallie asserts prosecutorial misconduct based on the reference to the jury sitting as "representatives of this whole community" and further stating that the jury decision will determine if "the defendant will be set free or held to

and you should disregard any remark, statement or argument which is not supported by the evidence or the law as given to you by the court."

account". At the conclusion of final argument the defendant moved for a mistrial based on these statements.

 On the first mention of "representatives of this community" the court overruled the objection and on the second occasion objection was sustained, but no curative instruction was requested. Assuming that the second objection was properly sustained and there was something improper in the reference to the jury being "representatives of this whole community", there is absolutely nothing about the statement which could not have been dealt with by a curative instruction. In the absence of such a request, the statement cannot be the basis for a mistrial.[24] We find nothing improper in the first reference,[25] although the objection may indeed have forestalled some improper argument. There was no request to the jury to "send a message" or "protect the community" or "demonstrate community disapproval" or anything that is inconsistent with the jury's duty to apply the law to the facts and find the defendant guilty or not guilty. The failure to request a curative instruction on the second occasion suggests that the objections were prophylactic and the words spoken were not in and of themselves a matter of great concern. Nor is there anything improper with stating that the defendant will be set free or held to account by a jury's decision; that is indeed the jury's responsibility and function. We do not find the argument improper but even if it was, there was certainly no abuse of discretion in the court's denying the motion for mistrial.[26]

COLEMAN and KENNEDY, JJ., concur.

Review granted at 119 Wn.2d 1001 (1992).

---

[24]*State v. Swan*, 114 Wn.2d 613, 790 P.2d 610 (1990), *cert. denied*, 111 S. Ct. 752 (1991).

[25]"You sit here today as a jury of the defendant's peers but you also sit here today as representatives of this community."

[26]*State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983).