

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 70943-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER DENYING MOTION |
| FRANCIS BATO, | ) | FOR RECONSIDERATION, |
| | ) | WITHDRAWING AND REPLACING |
| Appellant. | ) | OPINION |
| | ) | |

Appellant has filed a motion for reconsideration of the court's opinion issued October 27, 2014. The court has considered the motion and determined that the opinion should be withdrawn and replaced with an opinion adding a footnote on page 8 after the word "Affirmed," but that the motion for reconsideration should otherwise be denied. The footnote shall read:

"Following filing of this opinion, Bato moved for reconsideration, arguing that the standard of review is not abuse of discretion. Citing State v. Lindsay, 180 Wn.2d 423, 326 P.3d 125 (2014), he claimed that Lindsay "made clear that a motion for mistrial premised upon prosecutorial misconduct preserves the issue for appeal *but does not alter the standard of review.*" Motion to Reconsider at 2 (emphasis added). According to Bato, the standard of review for prosecutorial misconduct is whether the prosecutor's conduct was improper and prejudicial, not abuse of discretion. His motion fails for two reasons.

"First, Lindsay did not address any alleged difference between the standards of review for mistrial rulings and rulings on objections to alleged misconduct. Rather, it merely held that when prosecutorial misconduct is not objected to but is raised in a mistrial motion, the alleged error has been preserved and the stringent flagrant and ill-intentioned standard applicable to unpreserved claims does not apply. Lindsay, 180 Wn.2d at 430-31, 440-42. Second, Bato overlooks the fact that numerous decisions, including Lindsay, state that the standard of review for rulings on objections to prosecutorial

misconduct is abuse of discretion—the same standard applied to rulings on motions for a mistrial. Id. at 430 (allegations of prosecutorial misconduct are reviewed for abuse of discretion); State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010) (accord); compare State v. Rodriquez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002) (abuse of discretion standard applies on review of ruling denying mistrial). And whether the challenged ruling addresses an objection to alleged misconduct or a motion for a mistrial, we give deference to the ruling and will not reverse it absent a substantial likelihood that the alleged misconduct affected the verdict. Rodriquez, 146 Wn.2d at 269-70 (mistrial ruling will be overturned only if there is a substantial likelihood the error prompting the mistrial request affected the verdict); Ish, 170 Wn.2d at 195-200 (to demonstrate prosecutorial misconduct, a defendant must show both improper conduct and a substantial likelihood that such conduct affected the verdict; reviewing court defers to trial judge who "is generally in the best position to determine whether the prosecutor's actions were improper and . . . prejudicial."); State v. Stenson, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997) (where defendant objects or moves for a mistrial on the basis of prosecutorial misconduct, reviewing court gives deference to the trial court because of its superior position in assessing prejudice). Thus, contrary to Bato's assertions, the standard of review is abuse of discretion. His motion for reconsideration is denied."

Now therefore, it is hereby

ORDERED that opinion issued October 27, 2014 be withdrawn and a replacement opinion filed. It is further

ORDERED that appellant's motion for reconsideration is denied.

Done this ___ day of _____, 2014.

_____

_____

_____

2

COURT OF APPEALS
STATE OF WASHINGTON

2014 NOV 24 AM 9: 27

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>  v.<br><br>FRANCIS G. BATO,<br><br>                Appellant. | No. 70943-7-I<br><br><br><br>UNPUBLISHED OPINION<br><br>FILED:  November 24, 2014 |

PER CURIAM — Francis Bato appeals his convictions for unlawful imprisonment, assault, and violating a no-contact order.  He contends the prosecutor's repeated references in closing argument to facts outside the record amounted to misconduct and denied him a fair trial.  Because the alleged misconduct was the subject of a mistrial motion and the court was within its discretion in denying that motion, we affirm.

Based on allegations that Bato committed domestic violence against his girlfriend, Dinah Jimenez, the State charged him with unlawful imprisonment, fourth degree assault, interfering with domestic violence reporting, and violation of a court order.  At trial, the State's evidence established that on the evening of December 13, 2012, a friend drove Bato and Jimenez to Jimenez's apartment.  All three entered the apartment.  Jimenez eventually asked Bato and his friend to leave, but Bato refused and spent the night at Jimenez's apartment.

The next morning, Bato drove Jimenez to work. After dropping her off, Bato found Jimenez's iPad in his car and read some Facebook messages she had received from a male co-worker, Ronel Bunger.

Later that day, Bato and Jimenez were at her apartment when she received a phone call from Bunger. Bato became angry when he realized the call was from Bunger. Jimenez asked him to leave, but Bato refused to go and told Jimenez not to answer the phone. He then took Jimenez's phone from her, removed the battery, and put it in his bag.

Jimenez testified that she tried to leave the room three times, but Bato blocked the doorway and held her by her forearms. Roughly 30 minutes passed before Bato left and went outside. While he was gone, Jimenez sent a Facebook message to Bunger, stating, "I need help." Shortly thereafter, Jimenez heard her phone ringing in the bedroom and answered it. Bato came into the bedroom and grabbed the phone from Jimenez, causing her hand to bleed. Bato asked Jimenez, "Who are you calling?" She said Bunger had called to tell her the police were on their way.

King County Sheriff's Deputies Julian Chivington and Steven Perry investigated the incident. Deputy Chivington testified that Bato initially said he had not touched Jimenez. He later admitted that he was upset that Jimenez had another boyfriend and "grabbed her hand off of the doorknob and wouldn't let her leave." Jimenez was "distraught" and complained of pain in her arm. Deputy Chivington noticed injuries on her arms and photographed them. The photographs, which were

admitted as exhibits, showed red marks and bruising on Jimenez's bicep and forearm. Deputy Chivington testified that three or four of the red marks were grouped in a manner consistent with someone's fingertips. Jimenez testified that the marks "came from the time that [Bato] was stopping me to leave the room."

Deputy Perry testified that Bato led him and Deputy Chivington into the apartment where they found Jimenez "seated on the floor with her knees pulled up to her chest, arms wrapped around her legs." Deputy Perry spoke privately with Jimenez and determined there was probable cause to arrest Bato.

Jimenez's written statement to police was not admitted at trial. Jimenez admitted during her testimony, however, that she told police that Bato dragged her and threw her on the bed. She explained that she made the statement to police because "I was not in my right mind and I was just afraid." When asked generally about the statement, she said, "I don't really recall anymore what I have said." When asked specifically if she told police that Bato had knives or threatened to kill her, the police, and Bunger, she stated, "I don't really remember."

Bato testified and denied striking or pushing Jimenez or doing anything to stop her from leaving. He also denied grabbing any knives, leaving the apartment, or making any threats to kill Jimenez, the police, or Bunger. He admitted touching Jimenez because she was "hysterical" and he wanted to "calm her down." He claimed he "held her two hands, and then . . . sat her on the bed" and "laid her

down." He said he "was just preventing her from being hysterical." He admitted

taking Jimenez's phone and removing the battery.

During the prosecutor's closing argument, the following remarks, objections,

and rulings occurred:[1]

| | |
|---|---|
| Prosecutor: | Understandably, you may want to know about everything that happened, such as the knives, the threats, the dragging. And I submit to you that that is what happened that night. |
| Defense: | Objection, Your Honor; facts not in evidence. No one testified to the majority of those things. She asked about them. |
| Court: | The objection is overruled. The jurors are reminded that the statements by the attorneys during closing argument are not in and of themselves evidence. |
| | . . . . |
| Prosecutor: | So how did [Jimenez's] account change? She said that [Bato] didn't cause her any pain that night. She said that he didn't drag her to the bedroom, that he didn't grab |

_____

[1] Bato mentions two additional instances of alleged misconduct, one involving possible pressure on Jimenez to testify favorably to Bato and another involving the nature of the jury's task. Because he does not support his challenge to these remarks with meaningful analysis or argument, they need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument not supported by authority); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (insufficient argument); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (insufficient argument and authority). We note, however, that the remarks regarding possible pressure on Jimenez appear to have been reasonable inferences from the evidence and that asking the jury to hold Bato "accountable" was not improper. State v. McNallie, 64 Wn. App. 101, 111, 823 P.2d 1122 (1992) (not improper to tell jury that their verdict will determine whether "the defendant will be set free or held to account"); State v. Finch, 137 Wn.2d 792, 841-42, 975 P.2d 967 (1999) (asking the jury to act as the conscience of the community is not improper unless the intent is to inflame the jury).

those knives, he didn't threaten to kill the police, he didn't threaten to kill her.

Defense: Your Honor, I'm going to object to the extent that she's implying that there's evidence that he—she ever said those things. That's not in evidence and this is improper.

Court: The objection is overruled.

. . . .

Prosecutor: [Jimenez] said that she wasn't thinking clearly and she wasn't in her right mind when she gave her statement . . . .

Now in front of you, what she's trying to do is take back what she perceives to be the worst for him: the knives, the dragging, throwing on the bed, threatening to kill. She's smart.

Defense: Your Honor, again I'm going to object. This is misconduct at this point.

Court: The objection is overruled. The jurors are once again reminded that the lawyer's remarks during closing argument are not themselves evidence.

. . . .

Prosecutor: When she had just been through a terrifying experience, when she was crying that night and she needed help, she talked about what happened. After he kept her in the room, after he had taken the knives, after he threatened her life—

Defense: Objection, Your Honor. Again, facts not in evidence.

Court: The objection is overruled. The jurors are reminded that closing arguments and the statements made during closing argument are not themselves evidence.

Prior to the jury receiving the case, defense counsel moved for a mistrial based on "my objections during the State's closing with respect to statements about

No. 70943-7-I/6

the evidence, burdens of proof, and elements of the offense I believe that were

misstated." In denying the motion, the court stated in part,

> [W]ith regard to the actual presentations about what the victim said or
> did not say, I would incorporate my recitations . . . where I wanted the
> record to [show] that the alleged victim Jimenez's testimony was
> ambiguous. And she . . . didn't remember what she had previously said
> regarding knives, threats to kill, that type of thing, which makes this
> subject to argument. And it was argued. The Court therefore overruled
> most of the objections, but also took the opportunity to inoculate and
> remind the jurors that what the attorneys say[ ] is not in and of itself
> evidence. Moreover, this Court would make a finding that from where I
> sat, I did not infer any bad faith on behalf of the Prosecuting attorney
> during closing arguments. . . .
>
> . . . . The motion is therefore denied.

The court's written instructions to the jury stated that "the lawyers' statements

are not evidence," that they "must disregard any remark, statement, or argument that

is not supported by the evidence," that the only evidence before them was the

testimony, stipulations, and exhibits, and that "[i]f evidence was not

admitted . . . , then you are not to consider it in reaching your verdict."

The jury acquitted Bato of interfering with domestic violence reporting but

found him guilty of fourth degree assault, violation of a court order, and unlawful

imprisonment, with a special verdict finding of domestic violence. He appeals.

<u>DECISION</u>

It is improper for a prosecutor to make arguments based on facts not in

evidence.[2] Citing this rule, Bato contends the trial court denied him a fair trial "[b]y

---

[2] <u>State v. Dhaliwal</u>, 150 Wn.2d 559, 577, 79 P.3d 432 (2003).

-6-

permitting the prosecutor to repeatedly refer to facts outside the record, and overruling defense objections to her doing so." We disagree.

When, as in this case, alleged prosecutorial misconduct has been the subject of a mistrial motion, we review the court's ruling for abuse of discretion.[3] "[W]e give deference to the trial court's ruling because it is in the best position to evaluate whether the prosecutor's comment prejudiced the defendant."[4] A trial court should grant a mistrial only if a defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be tried fairly.[5] Considering the court's verbal and written instructions, the evidence, and the deference afforded the trial court's decision, we conclude the court did not abuse its discretion.

Each of the prosecutor's challenged remarks included some facts that were in evidence, such as Bato's dragging Jimenez, throwing her on the bed, and preventing her from leaving, and some facts that were not, such as Bato's alleged threats to kill. Rather than parse out the proper and improper portions of the remarks – something defense counsel failed to do in his objections -- the court chose instead to immediately and repeatedly remind the jurors that the lawyers' remarks were not evidence. The court's written instructions further emphasized that point, telling the

---

[3] State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). Defense counsel expressly moved for a mistrial based on the prosecutor's "statements about the evidence," and the court's ruling referenced the prosecutor's remarks regarding the knives, threat to kill, and "that type of thing."

[4] State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006).

[5] State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

jury exactly what was and was not evidence. We presume that juries follow their instructions.[6]

In addition, the evidence strongly supports the court's conclusion that a mistrial was not warranted. Bato admitted that he pulled Jimenez's hands off the doorknob, held her hands, and did not let her leave. He conceded that he violated the no-contact order. Jimenez admitted telling police that Bato dragged her, threw her on the bed, and prevented her from leaving. Testimony and photographs showed Jimenez's injuries, and other testimony established that she sent her friend a message during the incident asking for help.

Taken together, the instructions, evidence, and deference we afford a mistrial decision convince us that the court did not abuse its discretion in concluding that the alleged misconduct did not warrant a mistrial.[7]

Affirmed.[8] [9]

---

[6] State v. Klok, 99 Wn. App. 81, 85, 992 P.2d 1039 (2000) (citing State v. Lough, 125 Wn.2d 847, 864, 889 P.2d 487 (1995).

[7] We note that even if some of Bato's prosecutorial misconduct claims were not decided in the mistrial ruling, for the reasons stated above, he cannot meet his burden of demonstrating a substantial likelihood that any misconduct affected the jury's verdict. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

[8] Bato's motion for oral argument is denied.

[9] Following filing of this opinion, Bato moved for reconsideration, arguing that the standard of review is not abuse of discretion. Citing State v. Lindsay, 180 Wn.2d 423, 326 P.3d 125 (2014), he claimed that Lindsay "made clear that a motion for mistrial premised upon prosecutorial misconduct preserves the issue for appeal *but does not alter the standard of review.*" Motion to Reconsider at 2 (emphasis added). According to Bato, the standard of review for prosecutorial misconduct is whether the prosecutor's conduct was improper and prejudicial, not abuse of discretion. His motion fails for two reasons.

FOR THE COURT:

_____

_____
Spearman, C.J.

_____

---

First, <u>Lindsay</u> did not address any alleged difference between the standards of review for mistrial rulings and rulings on objections to alleged misconduct. Rather, it merely held that when prosecutorial misconduct is not objected to but is raised in a mistrial motion, the alleged error has been preserved and the stringent flagrant and ill-intentioned standard applicable to unpreserved claims does not apply. <u>Lindsay</u>, 180 Wn.2d at 430-31, 440-42. Second, Bato overlooks the fact that numerous decisions, including <u>Lindsay</u>, state that the standard of review for rulings on objections to prosecutorial misconduct is abuse of discretion—the same standard applied to rulings on motions for a mistrial. <u>Id.</u> at 430 (allegations of prosecutorial misconduct are reviewed for abuse of discretion); <u>State v. Ish</u>, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010) (accord); <u>compare</u> <u>State v. Rodriquez</u>, 146 Wn.2d 260, 269, 45 P.3d 541 (2002) (abuse of discretion standard applies on review of ruling denying mistrial). And whether the challenged ruling addresses an objection to alleged misconduct or a motion for a mistrial, we give deference to the ruling and will not reverse it absent a substantial likelihood that the alleged misconduct affected the verdict. <u>Rodriquez</u>, 146 Wn.2d at 269-70 (mistrial ruling will be overturned only if there is a substantial likelihood the error prompting the mistrial request affected the verdict); <u>Ish</u>, 170 Wn.2d at 195-200 (to demonstrate prosecutorial misconduct, a defendant must show both improper conduct and a substantial likelihood that such conduct affected the verdict; reviewing court defers to trial judge who "is generally in the best position to determine whether the prosecutor's actions were improper and . . . prejudicial."); <u>State v. Stenson</u>, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997) (where defendant objects or moves for a mistrial on the basis of prosecutorial misconduct, reviewing court gives deference to the trial court because of its superior position in assessing prejudice). Thus, contrary to Bato's assertions, the standard of review is abuse of discretion. His motion for reconsideration is denied.

-9-