# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50328-0-II |
| Respondent, | |
| v. | |
| JESSE ETHAN BUTLER, | UNPUBLISHED OPINION |
| Appellant. | |

Lee, J. — Jesse E. Butler appeals his jury convictions for second degree rape, third degree rape, fourth degree assault, tampering with a witness, and four counts of domestic violence court order violations.  Butler argues that (1) the evidence was insufficient to support his conviction for tampering with a witness, (2) the State engaged in prosecutorial misconduct by arguing facts not in evidence and deliberately appealing to the passion and prejudice of the jury, and (3) the trial court violated Butler's constitutional right to confront the State's witnesses by not allowing him to cross-examine the arresting officer on a statement Butler made to law enforcement.

We hold that the State presented sufficient evidence to support Butler's conviction for tampering with a witness, but we also hold that that the prosecutor's misconduct during closing argument deprived Butler of a fair trial on his rape charges.  Therefore, we affirm Butler's convictions for tampering with a witness, fourth degree assault, and the four counts of domestic

violence court order violations, but we reverse Butler's second degree rape conviction and third degree rape conviction.

FACTS

A.    THE RAPE AND ASSAULT

Jesse Butler and Sybil Butler[1] married in 2009. The couple have three children together who are between the ages of one and seven years old.

In 2016, Butler and Sybil got into an argument about their sex life and Sybil's prior infidelity. Butler began poking Sybil's chest, punching her arm, and hitting her head. At one point, Butler pulled her out of a chair and threw her across the floor into the kitchen. All three of their children were in the room during the argument. Butler then ordered Sybil into their bedroom, closed the door, and took off her clothes. Butler pushed Sybil onto the bed and inserted his penis into her anus. Sybil told him that it hurt, asked him to stop, and said " 'No' " several times. 8 Verbatim Report of Proceedings (VRP) (Mar. 21, 2017) at 919. Sybil also cried and screamed. After a few seconds, Butler penetrated Sybil vaginally. Butler held Sybil down by placing his hands on her neck and squeezing. Afterward, he pushed Sybil out of the house and locked the door.

Sybil went to a neighbor's house and called 911. When law enforcement responded to the scene, Butler agreed to speak with law enforcement about the incident. When asked by law enforcement whether his sex with Sybil was consensual, Butler told law enforcement that Sybil did not say yes or no, and "just laid there," but it was common for Sybil to not affirmatively consent

---

[1] For clarity, we refer to the appellant by his last name and to Sybil Butler by her first name. We mean no disrespect.

to sex and that it was normal for Sybil to not actively participate during sexual intercourse. 8 VRP (Mar. 21, 2017) at 1025.

The State charged Butler with second degree rape, third degree rape, fourth degree assault, and violation of a domestic violence no contact order, all charged as domestic violence incidents. While awaiting trial, Butler continued to contact Sybil. At one point he asked her to have the charges against him dropped. Butler told Sybil to tell the prosecutor's office that everything she said was not true, that she was just mad at the moment, and that she wanted the charges against Butler dropped.

Butler also repeatedly asked family members to maintain a relationship with Sybil and to contact Sybil on his behalf while he was in custody. These conversations were recorded through the jail phone system. The State amended Butler's charges to add three counts of violation of a domestic violence no contact order and one count of tampering with a witness.

B.    RELEVANT PORTIONS OF TRIAL

1.    Trial Testimony

At trial, Sybil and Sergeant Moore testified to the facts discussed above. Mercedes Wilson, the sexual assault nurse examiner who examined Sybil on the day of the incident, also testified. Wilson photographed and reported bruises to Sybil's arms and legs. However, Sybil did not tell Wilson how those injuries occurred, or whether they resulted from being grabbed or punched. Wilson also conducted a vaginal and anal exam. These exams did not reveal any injuries. The vaginal exam revealed redness to Sybil's cervix, but this could be caused by trauma or in other benign ways.

3

The State also called J.B., Butler's and Sybil's seven year old son, to testify. While J.B. was able to answer questions about his school and siblings, he had trouble answering questions about the day of the incident. J.B. began responding "Uh-uh" to the series of questions the State posed about the incident. 7 VRP (Mar. 20, 2017) at 884. After observing J.B.'s difficulty in testifying, the trial court recessed for the day. The next day, the State asked J.B. if he wanted to talk about the incident. J.B. responded, "No," and the State did not ask any further questions. 8 VRP (Mar. 21, 2017) at 908.

Butler also testified at trial. Butler admitted that he "quite roughly grabbed" Sybil's arm and poked Sybil in the chest. 5 VRP (Mar. 23, 2017) at 555. He also claimed that he asked Sybil whether she wanted to have sex with him and Sybil nodded yes. According to Butler, Sybil did not say anything while they had sex. On cross examination, the State asked Butler a series of questions about whether it was hygienic to have anal sex before vaginal sex without cleaning in between. Specifically, the State asked:

> Q. And between taking your penis out of her rectum and putting your penis into her vagina, you did not go shower or clean yourself off, right?
> A. This is correct.
> Q. You're aware that this is not hygienic at all, right?
> A. I — I'm not aware of that. We've done that before, so.
> Q. Don't you think putting fecal matter in a vagina would cause health risks for a female?
> A. I suppose it could.
> Q. Okay. Fair to say, at this point in time, you're not concerned about any health risks to your wife?
> A. I was not concerned about causing any health risks at the moment, no.

5 VRP (Mar. 23, 2017) at 573-74.

2.    Closing Argument

The prosecutor began her closing argument by arguing that Butler is "someone who will

not accept the meaning of 'no.' "  6 VRP (Mar. 24, 2017) at 690.  She continued to argue, "To

him, sex comes first.  Sex comes before love.  Sex comes before respect.  Sex comes before his

own family."  6 VRP (Mar. 24, 2017) at 690.  The prosecutor then argued that J.B.'s difficulty

testifying evidenced Butler's guilt, stating:

> This case started out with the testimony of 7-year-old [J.B].  He was present for this
> incident.  He places everyone there in the living room.
>
> . . . .
>
> . . . Now [J.B.] was comfortable — well, not comfortable, but fine talking
> about benign things, talking about his family, talking about school, talking about
> recess.
>
> . . . .
>
> . . . When it came time to talk about the incident itself, the argument, the
> violence, [J.B.] shut down.  That tells you something.  We got from him that he
> talked to a defense investigator.  We got from him that he previously talked to me
> about it, but he couldn't talk in court about this.  And no one was going to force
> him to; but if his Dad hadn't done something wrong, if his Dad hadn't done
> something bad, [J.B.], would not have had that demeanor.  [J.B.] would have been
> fine to proceed.

6 VRP (Mar. 24, 2017) at 706-07.

Butler objected that this argument was an impermissible inference.  The trial court did not

rule on the objection, but instead stated, "[n]oted."  6 VRP (Mar. 24, 2017) at 707.

Later, the prosecutor discussed Sybil's credibility and addressed some of the

inconsistencies in her trial testimony and the statements she made shortly after reporting the rape.

Specifically, the prosecutor argued:

> It is clear that [Sybil] cares about her kids, probably more than herself, and that might be the piece of this case, the piece of this incident that was the most troubling to her, the most disturbing for her.
>
> . . . .
>
> [Sybil] made her statements to the sexual assault nurse seven hours after the rape. She gave her statement here in court seven months after the rape. She has had time to heal, time to forget, time to cope. She has had time to block some of these details from her memory and move on. This is what trauma looks like. It looks like confusion, like loss of memory, like not knowing the order of things.

6 VRP (Mar. 24, 2017) at 712-13.

No witness at trial testified about trauma or the symptoms of trauma. Butler did not object to the above statements. The prosecutor then began discussing whether Butler's sexual practice of having anal sex and then vaginal sex was hygienic, arguing:

> [H]e never cleaned himself off. He had no concern for his wife's health. He kind of conceded that it's gross to put your penis in someone's anus and then immediately into her vagina. If you're having anal sex and vaginal sex, there is typically an order to that, and it's usually the opposite. When it's not, there is typically cleaning involved. This was not consensual. This was not normal sex.

6 VRP (Mar. 24, 2017) at 714.

Again, Butler did not object to these statements. Finally, the prosecutor urged the jury to hold Butler accountable for his actions. The prosecutor concluded closing argument with:

> I am asking that you hold the defendant accountable, accountable for rape, accountable for assault, accountable for witness tampering, accountable for violating the no-contact order, and most of all, accountable for refusing to respect the meaning of "No." I ask that you return verdicts of guilty on all eight counts.

6 VRP (Mar. 24, 2017) at 715.

The jury found Butler guilty as charged.[2]  Butler appeals.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE ON TAMPERING WITH A WITNESS CHARGE

Butler argues that insufficient evidence supported his conviction for tampering with a witness because the evidence only showed that Butler tried to convince Sybil to have the charges against him dropped, not to testify falsely.  We disagree.

1.    Standard of Review

We review a challenge to the sufficiency of the evidence de novo.  *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).  "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  An insufficiency claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence.  *Id.*  All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant."  *Id.*  Direct and circumstantial evidence are equally reliable.  *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).  And we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence.  *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

---

[2] At sentencing, the trial court dismissed the third degree rape charge, finding that it merged with Butler's second degree rape conviction.

2.      The Evidence was Sufficient

"A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding . . . to . . . [t]estify falsely."  RCW 9A.72.120(1)(a).[3]  " 'Testimony' includes oral or written statements, documents, or any other material that may be offered by a witness in an official proceeding."  RCW 9A.72.010(6).

Butler argues that the State failed to prove that he attempted to induce Sybil to testify falsely in an official proceeding by asking her to talk to the prosecutor's office.  After Sybil reported the incident to the police, Butler told her to go to the prosecutor's office and ask them to drop the sexual assault charge and no contact order against him.  Butler told Sybil to tell the prosecutor's office "that everything that [she] said wasn't true, and that [she] was just mad at the moment, and that [she] wanted — and that [she] wanted to drop the charges."  8 VRP (Mar. 21, 2017) at 940.  Butler's request that Sybil lie to the prosecutor's office would have little effect if it did not also imply that she needed to be willing to testify consistently with what she told the prosecutor's office.  *See State v. Gonzalez*, 2 Wn. App. 2d 96, 115, 408 P.3d 743 (rejecting defendant's argument that encouraging his girlfriend to lie to the defense investigator was not

---

[3] A person is also guilty of tampering with a witness if he or she tries to induce a witness to "[a]bsent himself or herself from such proceedings" or to "[w]ithhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency."  RCW 9A.72.120(1)(b), (c).  However, the State only charged Butler with tampering with a witness based on attempting to induce a witness to testify falsely.  And the jury instructions provided that "[a] person commits the crime of tampering with a witness when he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding . . . to testify falsely."  Clerk's Papers at 101.  "[J]ury instructions not objected to become the law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

equivalent to inducing her to testify falsely), *review denied*, 190 Wn.2d 1021 (2018). Accordingly, Butler's insufficiency argument fails, and we affirm his witness tampering conviction.

B.      PROSECUTORIAL MISCONDUCT

Butler argues that four types of statements the prosecutor made during closing argument constituted prosecutorial misconduct. These statements were that (1) the jury could infer that J.B.'s reluctance to testify was evidence that Butler had " 'done something wrong,' " (2) that Butler's sexual practices were " 'not normal' " and " 'gross,' " (3) that Sybil's demeanor and memory loss during her testimony was " 'what trauma looks like,' " and (4) that the jury should hold Butler " 'accountable' " for his actions. Br. of Appellant at 15, 17, 19, 21. We agree that these statements were improper and that their cumulative effect denied Butler a fair trial as to his second and third degree rape charges.

1.      Standard of Review

The right to a fair trial is a fundamental liberty guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012), *cert. denied*, 136 S. Ct. 357 (2015). To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.* at 760.

However, if a defendant does not object at trial, he or she is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *Id.* at 760-61. Under this heightened standard of

review, the defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.' " *Id.* at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In making a prejudice determination, we "focus less on whether the prosecutor's misconduct was flagrant or illintentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

2.  Improper Conduct

In closing argument, a prosecutor is afforded wide latitude to argue reasonable inferences from the evidence. *Glasmann*, 175 Wn.2d at 704. However, a prosecutor must " 'seek convictions based only on probative evidence and sound reason.' " *Id.* (quoting *State v. Casteneda-Perez*, 61 Wn. App. 354, 363, 810 P.2d 74 , *review denied*, 118 Wn.2d 1007 (1991)). A prosecutor commits misconduct by encouraging the jury to decide a case based on evidence outside of the record. *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012). " '[E]vidence is "[s]omething (including *testimony, documents, and tangible objects*) that tends to prove or disprove the existence of an alleged fact.' " *State v. Boehning*, 127 Wn. App. 511, 522, 111 P.3d 899 (2005) (quoting BLACK'S LAW DICTIONARY 595 (8th ed. 2004)) (emphasis in original).

Also, it is improper for a prosecutor to " 'use arguments calculated to inflame the passions or prejudices of the jury.' " *Glasmann*, 175 Wn.2d at 704 (quoting AM. BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE, std. 3-5.8(c) (2d ed. 1980)). During closing argument, a prosecutor may not deliberately appeal to the jury's passions and prejudice and encourage a verdict not based on properly admitted evidence. *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988).

a. Argument related to J.B.'s testimony

Here, J.B. testified that he saw Butler and Sybil fight in the living room. He then immediately said he did not want to talk about the incident and did not provide any detailed testimony as to what he specifically saw in the living room that day. J.B. became uncomfortable and refused to answer any of the prosecutor's questions about the fight he witnessed.

Nonetheless, the prosecutor argued in closing that the children were all present "when that forcible compulsion beg[an]." 6 VRP (Mar. 24, 2017) at 705. She then specifically argued that the jury could infer Butler's guilt from J.B.'s demeanor and reluctance to testify. Specifically, she argued:

> When it came time to talk about the incident itself, the argument, the violence, [J.B.] shut down. That tells you something. We got from him that he talked to a defense investigator. We got from him that he previously talked to me about it, but he couldn't talk in court about this. And no one was going to force him to; but if his Dad hadn't done something wrong, if his Dad hadn't done something bad, [J.B.] would not have had that demeanor. [J.B.] would have been fine to proceed.

6 VRP at 706-07.

These statements told the jury that they could infer Butler's guilt as to the second degree rape and third degree rape charges from the lack of testimony, and thus lack of evidence offered through J.B. This was not a reasonable inference based on the evidence at trial and was improper. *See State v. Jones*, 144 Wn. App. 284, 297, 183 P.3d 307 (2008) (holding it improper for the prosecutor to argue that the jury could infer that a witness did not testify at trial because he was afraid of the defendant).

11

> b.      Argument related to symptoms of trauma

The prosecutor argued that Sybil's confusion and poor memory during trial were the result of trauma. Even though no witness testified about trauma or the symptoms of trauma, the prosecutor argued in closing that inconsistencies in Sybil's trial testimony were due to trauma. Specifically, the prosecutor argued:

> [Sybil] made her statements to the sexual assault nurse seven hours after the rape. She gave her statement here in court seven months after the rape. She has had time to heal, time to forget, time to cope. She has had time to block some of these details from her memory and move on. This is what trauma looks like. It looks like confusion, like loss of memory, like not knowing the order of things.

6 VRP (Mar. 24, 2017) at 712-13.

Given that there was no evidence about the symptoms of trauma or whether Sybil had been diagnosed with trauma, such argument encouraged the jury to decide this case based on facts not in evidence. This was improper. *See Glasmann*, 175 Wn.2d at 705 ("[I]t is error to submit evidence to the jury that has not been admitted at trial.")

> c.      Comment on "normal sex"

Butler argues that the prosecutor committed misconduct by making several statements designed to inflame the passion and prejudice of the jury. Specifically, Butler contends that it was improper for the prosecutor to tell the jury that (1) Butler's sexual practices were " 'not normal' " and " 'gross,' " and that (2) Butler prioritized sex before his family. Br. of Appellant at 17. We agree that the prosecutor's statements were improper.

Here, no witness testified about the health risks associated with engaging in anal sex and then vaginal sex. But the prosecutor cross-examined Butler about whether this practice was sanitary. The prosecutor asked Butler if he had cleaned his penis after inserting it into Sybil's anus

and before inserting it into her vagina. When Butler answered that he had not, the prosecutor asked

Butler, "You're aware that this is not hygienic at all, right?" 5 VRP (Mar. 23, 2017) at 573. Butler

responded that he was not aware and that he and Sybil had done this before. The prosecutor

responded by asking Butler whether he thought "putting fecal matter in a vagina would cause

health risks for a female," to which Butler responded "I suppose it could." 5 VRP (Mar. 23, 2017)

at 574. Based on this, the prosecutor argued during closing:

> [H]e never cleaned himself off. He had no concern for his wife's health. He kind of conceded that it's gross to put your penis in someone's anus and then immediately into her vagina. If you're having anal sex and vaginal sex, there is typically an order to that, and it's usually the opposite. When it's not, there is typically cleaning involved. This was not consensual. This was not normal sex.

6 VRP (Mar. 24, 2017) at 714.

The State never called any witnesses or medical professionals to testify as to the health

risks associated with this sexual practice. And when asked on cross examination, Butler actually

testified that he was not aware that this was unhygienic and that he and Sybil had engaged in this

sexual practice before. The entire basis for the State's argument appeared to stem from the

prosecutor's personal opinion that engaging in anal sex before vaginal sex was atypical,

unhygienic, gross, and that "there is typically cleaning involved" when one has anal sex and then

vaginal sex. 6 VRP (Mar. 24, 2017) at 714. Not only was this argument unsupported by the

evidence, but it also served no purpose other than to deliberately appeal to the passions and

prejudice of the jury. The prosecutor described Butler's sexual conduct as abnormal and gross,

and implied that because this sexual act was not normal, it could not have been consensual. This

was a deliberate appeal to the passions and prejudice of the jury, and was improper.

Butler also argues that the prosecutor committed misconduct by arguing that Butler prioritizes sex before love, respect, and his own family. We agree that this was also an improper appeal to the passion and prejudice of the jury.

An appeal to the passion and prejudice of the jury through use of inflammatory rhetoric is improper. *State v. Belgarde*, 110 Wn.2d at 507-08. Statements that Butler prioritized sex over love and family served no purpose other than to evoke an emotional reaction in the jury. No one testified that Butler prioritized sex in this way. And even if Butler testified that sex was more important to him than love or his family, this does not show that he had sexual intercourse with Sybil through forcible compulsion or without her consent. These comments were an improper appeal to the passion and prejudice of the jury, and encouraged the jury to render a verdict based on Butler's sexual proclivities, rather than the evidence at trial.

> d. Argument based on Sybil's love for her children

Butler argues that the prosecutor impermissibly appealed to the passions and prejudice of the jury by stating that Sybil clearly cared about her children. Specifically, Butler assigns error to the following argument:

> It is clear that [Sybil] cares about her kids, probably more than herself, and that might be the piece of this case, the piece of this incident that was the most troubling to her, the most disturbing for her.

6 VRP (Mar. 24, 2017) at 712.

We agree that this statement was an improper appeal to passion and prejudice. It served no purpose other than to appeal to the jury's sympathy. Whether Sybil cared about her children and was distraught that this incident occurred with them nearby was not relevant to Butler's guilt.

e.  Asking the jury to hold Butler accountable

Butler assigns error to the following argument the State made in closing:

I am asking that you hold the defendant accountable, accountable for rape, accountable for assault, accountable for witness tampering, accountable for violating the no-contact order, and most of all, accountable for refusing to respect the meaning of "No."  I ask that you return verdicts of guilty on all eight counts.

6 VRP (Mar. 24, 2017) at 715.

Butler argues that this statement was improper because the role of the jury is to hold the State to its burden of proof, not to hold individuals accountable for their wrongdoing.  We agree that this statement was improper.

It is not improper for a prosecutor to state "that the defendant will be set free or held to account by a jury's decision; that is indeed the jury's responsibility and function."  *State v. McNallie*, 64 Wn. App. 101, 111, 823 P.2d 1122 (1992), *aff'd*, 120 Wn.2d 925, 846 P.2d 1358 (1993).  However, here the prosecutor did not limit her argument to asking the jury to hold Butler accountable on each of his charges.  She asked the jury to hold him "most of all, accountable for refusing to respect the meaning of 'No.' "  6 VRP (Mar. 24, 2017) at 715.  This statement asked the jury to hold Butler accountable for all of the crimes charged based on a social commentary, rather than law, and invited the jury to send a broader message by finding Butler guilty of rape.  This was improper.

3.  Prejudice

Butler argues that the cumulative effect of the instances of misconduct compel reversal.  We agree that the repeated instances of misconduct compel reversal of his second and third degree rape convictions.

15

In analyzing prejudice, we look at the prosecutor's comments in the context of the entire argument, the issues in the case, the evidence, and the instructions provided to the jury. *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). Where a curative instruction could have cured the error, a defendant cannot demonstrate flagrant and ill-intentioned conduct. *State v. Walker*, 164 Wn. App. 724, 737, 265 P.3d 191 (2011). *adhered to on remand*, No. 39420-1-II (Wash. Ct. App. Feb. 25, 2013) (unpublished).[4] However, "the cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect." *Id.*

Here, the instances of misconduct permeated the State's closing argument. The State focused its closing argument on the rape charges. The prosecutor first argued that Butler prioritized sex over love, respect, and his family. She then claimed that the forcible compulsion element of the rape began in the presence of their children, and argued that the jury could infer that Butler raped Sybil based on their seven year old son's reluctance to testify.[5]

The prosecutor spent the remainder of her argument commenting that Butler's sexual practices were "not normal" and "gross," and therefore could not be consensual. 6 VRP (Mar. 24, 2017) at 714. She then made deliberate appeals to the passions and prejudice of the jury by diagnosing Sybil with trauma, even though no one testified as to the symptoms of trauma, and focusing on Sybil's love for her children. Finally, she concluded her closing argument by inviting

---

[4] http://www.courts.wa.gov/opinions/pdf/D2%2039420-1-II%20%20Unpublished%20Opinion%20After%20Remand%20(2).pdf

[5] Even though Butler objected to this argument as an impermissible inference, the trial court did not rule on his objection.

the jury to send a broader social message and hold Butler accountable for "refusing to respect the meaning of 'No.' " 6 VRP (Mar. 24, 2017) at 715.

The prosecutor's improper comments throughout closing argument were used to develop themes around "normal sex," "the meaning of 'No,' " and whether Butler prioritized sex over love, respect, and his family. 6 VRP (Mar. 24, 2017) at 714-15. Given the conflicting evidence as to the rape charges and the repeated instances of misconduct, the cumulative effect of the prosecutor's repetitive prejudicial comments were so flagrant that no instruction or series of instructions could have erase their combined prejudicial effect. Therefore, we hold that the cumulative effect of the misconduct requires reversal and remand for a new trial on Butler's rape charges.

However, Butler does not show prejudice as to his other convictions because the State focused its closing argument on the rape charges, and the instances of misconduct went directly to the rape charges. Given that Butler admitted that he poked Sybil's chest and "quite roughly" grabbed her arm, he fails to show a substantial likelihood that the prosecutor's misconduct affected the verdict as to his assault charge. 5 VRP (Mar. 23, 2017) at 555. And his convictions for violation of a no contact order were based on the numerous jail recordings admitted into evidence in which Butler repeatedly asked family members to maintain a relationship with Sybil and contact Sybil on his behalf. Butler's tampering with a witness conviction also stemmed from his conduct following arrest, and he fails to show prejudice based on the prosecutor's improper arguments related to the rape charges.[6]

---

[6] Because we reverse the rape convictions, we do not reach Butler's argument that the trial court violated his constitutional right to present a defense by not allowing him to elicit testimony about the statements he made to law enforcement about Sybil's common practice during sexual intercourse with him.

No. 503280-II

Accordingly, we affirm Butler's convictions for tampering with a witness, fourth degree assault, and the four counts of domestic violence court order violations, but we reverse Butler's second degree rape conviction and third degree rape conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

I concur:

Maxa, C.J.

Bjorgen, J.