[No. 59069-9.   En Banc.   February 25, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. LLOYD H. MCNALLIE, *Petitioner*.

*Karen A. Chaney* of *Washington Appellate Defender Association,* for petitioner.

*David S. McEachran, Prosecuting Attorney, Mac D. Setter, Chief Criminal Deputy,* and *Craig D. Chambers, Deputy,* for respondent.

GUY, J. — Lloyd McNallie seeks reversal of a Court of Appeals decision affirming his convictions for two counts of communication with a minor for immoral purposes. We affirm the Court of Appeals.

## FACTS

McNallie was convicted in May 1990 of two counts of communication with a minor for immoral purposes and one count of indecent exposure. These convictions stem from events occurring on March 6, 1990, when McNallie drove into a Bellingham apartment complex and accosted three young girls, C.L.1, age 11, C.L.2, age 10, and E.A., age 11. The girls testified that as they were returning home from school, McNallie drove past them into the complex then turned his truck around and stopped, facing the exit. When the girls approached, McNallie asked them if there was any-one in the area who gave "hand jobs". All three girls testified that McNallie suggested people could earn money for per-

forming such an act. There was also testimony that McNallie handled his penis in view of at least two of the girls.

The girls became frightened and ran to a neighbor who was outside his apartment. As McNallie drove away, the mother of one of the girls drove into the parking area. She noticed McNallie's Bronco truck leaving, as it almost collided with another vehicle. The girls told her what had happened, and she gathered them in her car and followed McNallie until they could make a note of his license plate number.

Police traced the vehicle through its license plate number to McNallie's father. Investigating officers spoke by telephone with McNallie, who was a resident of his parents' home. Officer Harold Barnette later testified that McNallie acknowledged at this time that he had been in the area in question looking for a friend's house.

Detective Glen Hutchings interviewed McNallie at the police department the day after the incident. McNallie told Hutchings he had been looking for a massage parlor, and that three girls approached him and asked what he was looking for. McNallie said that when he told them he was looking for a massage parlor, they did not understand the term, and so he explained to them it was a place where one could get a "hand job". McNallie told Hutchings the girls were persistent in asking the meaning of "hand job", so he demonstrated for them using an artificial penis. McNallie told Detective Hutchings that he left the area when the girls became agitated. McNallie denied exposing himself to the girls. He also denied asking them to give him a "hand job" in exhange for money, but he admitted he may have said to the girls in general terms that money was paid for performing such an act. McNallie used an artificial penis to demonstrate for Hutchings what he said he had done in the presence of the girls. McNallie also told Hutchings that he had not been "wearing" the artificial penis at the time in question, but had worn it earlier in the day under his clothes as a means of enhancing his groin appearance.

At trial, E.A. testified that she noticed McNallie's vehicle while the three girls were walking home from school. She

stated that she and C.L.1 stopped to talk to McNallie, while C.L.2 continued walking ahead not having noticed her companions had stopped. E.A. testified that McNallie asked them "if there was anybody that gave hand jobs around the apartments", described the meaning of "hand job", and demonstrated by touching his own genitals. When asked on direct examination if McNallie offered money in exchange for a "hand job", E.A. answered: "Yes, he said if we did he would give us fifteen, ten or twenty dollars."

C.L.1 testified that McNallie primarily talked to E.A. and herself, and that the first thing he asked them was "if there was a hand job in the apartment complex." She stated that she saw McNallie expose himself while explaining the term and that McNallie mentioned money to E.A. and herself during this confrontation, although she was not sure who would get the offered money.

C.L.2 testified that McNallie asked the girls to come over to his stopped truck, and that she did hear McNallie ask the girls if they knew what a "hand job" was. After the three girls said no, C.L.2 testified that she left. She stated that she returned in time to hear McNallie mentioning money. C.L.2 testified that McNallie told the girls that $20, $15 or $10 was paid for doing what McNallie was discussing, but that she was not certain if McNallie had offered the girls a chance to earn money.

At the conclusion of the trial, the jury was instructed on four counts of alleged criminal violations. Counts 1, 2, and 3 charged violations of RCW 9.68A.090 — communication with a minor for immoral purposes — regarding E.A., C.L.1, and C.L.2, respectively. Count 4 charged indecent exposure respecting E.A. The jury found McNallie guilty of counts 1, 2, and 4. McNallie was found not guilty of count 3, the communication for immoral purposes charge respecting C.L.2.

McNallie appealed his convictions on the two counts of communication for immoral purposes, arguing that the jury had been improperly instructed regarding those counts and that the State had not carried its burden of proof. The Court of Appeals affirmed McNallie's convictions. *State v.*

*McNallie*, 64 Wn. App. 101, 823 P.2d 1122 (1992). We affirm the Court of Appeals.

ANALYSIS

Under RCW 9.68A.090, any person "who communicates with a minor for immoral purposes" is guilty of a crime. The issue presented is whether the term "immoral purposes" in RCW 9.68A.090 refers only to purposes related to crimes defined in RCW 9.68A, and, if so, whether the trial court committed reversible error by leaving the term defined only as "immoral purposes of a sexual nature".

The trial court's instructions to the jury provided that in order to convict McNallie of each count of communication with a minor for immoral purposes, the jury had to find that he communicated with the named child, by words or conduct, for "immoral purposes of a sexual nature". The court declined to give McNallie's proposed instruction, which would have required the communication to express a desire to have the minor "engage in sexually explicit conduct which will be photographed or made a part of a live performance; or [h]ave the minor engage in sexual conduct for a fee." The court regarded this instruction as too narrow because it excluded other kinds of immoral communications, such as attempting to persuade a child to perform or engage in sexual acts with an adult without a fee.

On appeal, McNallie assigned error to the trial court's refusal to give his proposed jury instruction. The Court of Appeals held that the term "immoral purposes" must be construed as referring only to communications where a defendant involves a minor in activity expressly defined as "sexual exploitation" under RCW 9.68A; and that unless "immoral purposes" is limited in the way indicated in Mc-Nallie's instruction, the term is unconstitutionally vague. 64 Wn. App. at 107. The Court of Appeals also held, however, that the trial court's error was harmless because the jury would have reached the same result in the absence of the error, and because each party was permitted to argue its theory of the case under the instructions given. 64 Wn. App. at 109-10. We agree that the meaning of the term "immoral

purposes" must be limited by its statutory context, but we hold the trial court's instruction was adequate. The statutory context of RCW 9.68A.090 does not require the term "immoral purposes" be given the narrow meaning urged by McNallie.

The predecessor of RCW 9.68A.090, former RCW 9A.88-.020, was challenged as unconstitutionally vague by the defendant in *State v. Schimmelpfennig*, 92 Wn.2d 95, 102, 594 P.2d 442 (1979).[1] There, the defendant had sought to engage three children in indecent liberties by trying to coax them into his van for sexual acts. This court held that in evaluating the defendant's vagueness claim, it would "look at the whole statute in the context in which it appears in the criminal code." *Schimmelpfennig*, at 102. We noted that RCW 9A.88.020 was part of "a chapter which prohibits conduct relating to exposure of the person, prostitution, and certain indecent liberties." *Schimmelpfennig*, at 102. Considering the statute in its statutory context, we reasoned that the "structure of this chapter of our criminal code gives ample notice of the legislature's *intent to prohibit sexual misconduct.* . . . The scope of the statutory prohibition is thus limited by its context and wording to communication for the purposes of sexual misconduct." (Italics ours.) *Schimmelpfennig*, at 102.

The holding in *Schimmelpfennig* was made part of the pattern instructions on communication with a minor for immoral purposes, which required the State to prove the defendant communicated with a minor "for immoral purposes of a sexual nature". 11 Wash. Prac., *WPIC* 47.05-47.08 (Supp. 1986). The comments to the pattern instructions explain that the "case law concerning the sexual nature of the communication" continues to apply in prosecutions under RCW 9.68A.090. *See* 11 Wash. Prac., *WPIC* 47.07 com-

---

[1]The Legislature recodified RCW 9A.88.020, the statute interpreted in *Schimmelpfennig*, as former RCW 9A.44.110, part of a chapter covering many sex crimes. Laws of 1979, 1st Ex. Sess., ch. 244, § 17. In 1984, the Legislature repealed RCW 9A.44.110 and enacted a slightly modified version of the statute in a different chapter, current RCW 9.68A.090. Laws of 1984, ch. 262, §§ 13, 8.

ment, at 171 (Supp. 1986). This was the instruction given by the trial court under RCW 9.68A.090 in McNallie's case.

In arguing that the trial court's instruction was error, McNallie relies on *State v. Danforth*, 56 Wn. App. 133, 782 P.2d 1091 (1989), in which the defendant made a vagueness challenge to RCW 9.68A.090. The court held that RCW 9.68A.090 was unconstitutionally vague as applied to the defendant's conduct, which involved asking minors to participate in group sexual activity. The court reasoned that the statute was unconstitutionally vague unless limited in its application only to those acts of "sexual exploitation" specifically proscribed under RCW 9.68A. Because RCW 9.68A did not specifically proscribe the defendant's conduct, the court concluded his conduct did not fall within the constitutional "core" of the statute. Danforth, at 136-37.[2] McNallie now urges us to follow *Danforth*, and to hold that the only communications with minors prohibited by RCW 9.68A.090 involve child prostitution or child pornography.

Our opinion in *Schimmelpfennig* is controlling. To be consistent with *Schimmelpfennig*, we consider "the whole statute in the context in which it appears in the criminal code." *Schimmelpfennig*, at 102. *Danforth* interprets the *Schimmelpfennig* rule too narrowly. The *Schimmelpfennig* reasoning does not require a holding of instructional error in McNallie's case. It instead supports the "immoral purposes" instruction given by the trial court in McNallie's case because it concludes that "immoral purposes" refers to the broad category "sexual misconduct":

> The statute attacked here is the first provision in a chapter which prohibits conduct relating to exposure of the person, prostitution, and certain indecent liberties. Thus, structure of this chapter of our criminal code gives ample notice of the legislature's intent to prohibit sexual misconduct. This commonsense understanding of the intent of the statute is reinforced by the language of RCW 9A.88.020 itself, which escalates the misdemeanor to a felony where the defendant has previously been convicted of a felony *sexual* offense. *The scope*

---

[2]The reasoning in *Danforth* was recently called into question by Division Two of the Court of Appeals in *State v. Luther*, 65 Wn. App. 424, 830 P.2d 674 (1992).

*of the statutory prohibition is thus limited by its context and wording to communication for the purposes of sexual misconduct.*

(Some italics ours.) *Schimmelpfennig*, at 102. *Schimmelpfennig* does not so restrict the subject of the term "immoral purposes" to include only specific offenses delineated in RCW 9A.88.020. On the contrary, after noting some of the specific offenses in former RCW 9A.88, the court determined that the context of the term "immoral purposes" is the rather broad area of "sexual misconduct".

McNallie's argument is that the current placement of the statute in RCW 9.68A does not harmonize with the *Schimmelpfennig* definition of the term. We disagree. Our opinion in *Schimmelpfennig* noted that strict item-by-item detail is not necessary in describing the prohibited conduct in the context of protecting children from being accosted with predatory sexual advances:

> In *State v. Galbreath*, [69 Wn.2d 664, 419 P.2d 800 (1966)] the court considered a vagueness challenge to the words "indecent" and "obscene" in a criminal statute protecting children. We said there:
>
>> In our view, further and more detailed legislative delineation of the particular misconduct [prohibited by the statute] . . . is neither dictated by any flux in social values nor otherwise constitutionally required. We are satisfied that any person of common understanding, contemplating a lewd exhibition of the private parts of his or her person before a child under the age of 15 years, need not guess nor speculate as to the proscription and penalties of the statute as it is presently written.
>
> *State v. Galbreath, supra* at 668-69. Here we also satisfied that any person of common understanding, contemplating asking a small child to climb into a van and engage in sexual activities need not guess as to the proscription and penalties of the statute. We therefore conclude the words "immoral purposes" in this statute are not unconstitutionally vague.

*Schimmelpfennig*, at 102-03.

Based on this reasoning, a similar approach to the term "immoral purposes" is equally applicable in McNallie's case. Our above quoted *Schimmelpfennig* reasoning expressly rejected a detailed delineation of the requisite misconduct and led to a holding that "sexual misconduct" was a suffi-

cient context for the "immoral purposes" contemplated by the communications with a minor statute. *See Schimmelpfennig*, at 103.

We overrule *Danforth* insofar as it requires reference to the individual sections of RCW 9.68A to define the "immoral purposes" for which communication with minors is legislatively prohibited. In so doing we note great importance was placed on the protection of children in the legislative finding which introduces RCW 9.68A. It states in pertinent part:

> The legislature finds that the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children.

RCW 9.68A.001. We hold that the communication statute, as written and currently located in the code, does not only contemplate participation by minors in sexual acts for a fee, or appearance on film or in live performance while engaged in sexually explicit conduct. Rather, the statute prohibits communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct. McNallie was engaged in just such proscribed promotion when he accosted the three girls in this case. The instruction which told the jury that "immoral purposes" could be defined as "immoral purposes of a sexual nature" was adequate. There was no instructional error in McNallie's trial. The analysis in *Schimmelpfennig* satisfies vagueness protections notwithstanding the current location of the statute.

■ We hold that RCW 9.68A.090 does not require the defendant to have made an express offer of payment to a minor in exchange for the minor engaging in sexual conduct. It is sufficient under the statute that the defendant indicated to the minor he would pay *anyone* for engaging in specific sexual conduct. Such communication, while not the only type which would incur criminal liability under RCW 9.68A.090, represents a predatory undertaking. McNallie

not only expressed an interest but a *present* interest in sexual contact for a fee to the impressionable children in this case. It is unnecessary under the statute for the defendant to have actually communicated a valid contractual "offer" to a 10- or 11-year-old child. An invitation or inducement to engage in behavior constituting indecent liberties with or without consideration, for example, would also satisfy the statute.

Finally, we consider McNallie's argument that the State must prove beyond a reasonable doubt the constitutional validity of his 1977 conviction of indecent liberties, which was used to prove the felony level of his current offense of communication with a minor for immoral purposes.[3] The Court of Appeals rejected McNallie's argument, holding that under *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986), the State is not required to prove beyond a reasonable doubt the validity of the predicate felony conviction for purposes of felony communication with a minor for immoral purposes under RCW 9.68A.090.

■ We need not reach the merits of this argument because even if the State were held to the higher standard, it is clear the showing made by the State would satisfy that standard. McNallie's only challenge to his prior conviction was that the plea form did not show that he was informed of his right to remain silent at trial prior to entry of his plea of guilty. The Court of Appeals correctly observed that the absence of this showing on the plea form does not make McNallie's plea facially invalid. *McNallie*, 64 Wn. App. at 106. *See In re Harris*, 111 Wn.2d 691, 697, 763 P.2d 823 (1988), *cert. denied*, 490 U.S. 1075 (1989).

■ Moreover, the Court of Appeals correctly held that the 1977 transcript presented to the trial court on the pretrial motion supported a finding that McNallie made a valid

---

[3]Communication with a minor for immoral purposes is a gross misdemeanor unless the defendant has previously been convicted of a sex offense, "in which case the person is guilty of a class C felony punishable under chapter 9A.20 RCW." RCW 9.68A.090.

waiver of his right to remain silent. According to McNallie's representation of the record, he was informed at his 1977 indecent liberties arraignment proceeding of his right to remain silent at trial. The excerpt from the entry of McNallie's 1977 guilty plea reveals that the court asked McNallie if he understood the rights read to him at his arraignment. McNallie affirmed that he did. The court told McNallie these rights could only be enjoyed if he went to trial, that they did not apply if McNallie pleaded guilty. Again McNallie affirmed that he understood. The trial court in McNallie's current case was provided with transcripts of McNallie's previous proceedings. We agree with both the trial court and the Court of Appeals that McNallie made a knowing, intelligent, and voluntary waiver of his right to remain silent. *See State v. McNallie*, 64 Wn. App. at 106.

### CONCLUSION

We hold that the term "immoral purposes" was properly defined in the jury instructions in McNallie's case as "immoral purposes of a sexual nature". There was no instructional error. We accordingly uphold McNallie's convictions. The decision of the Court of Appeals is affirmed.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.