FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2014 JAN 21 AM 11: 14



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | NO. 68745-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| NORMA JUDITH DEDIOS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 21, 2014 |
| | ) | |

LAU, J. — Norma Dedios challenges the sufficiency of the evidence supporting her conviction under RCW 9.68A.090 for communicating with a minor for immoral purposes. We hold that the evidence, viewed in the light most favorable to the State, is sufficient to sustain the conviction. Accordingly, we affirm the trial court.

FACTS

Dedios (age 33) met SR (age 13) in June 2009, after befriending SR's mother. Dedios offered to help SR's mother, who indicated that SR was rebellious. Dedios invited SR to visit her home. Soon, SR began to visit regularly, without invitation. Approximately a week after his first visit, SR slept with Dedios on a fold-out bed in the playroom. Dedios said she stayed with SR because she did not trust him around her

daughter, DB. At some point during the night, Dedios and SR kissed. Each testified that the other initiated the kiss. Not long after this incident, SR spent the night again. This time, SR slept with Dedios in her bedroom. At trial, Dedios testified that SR raped her. SR testified, "It was both of us participating." Report of Proceedings (RP) (Feb. 16, 2012) at 59. He then testified that, throughout an unspecified period, he and Dedios had sex "more than ten times." RP (Feb. 16, 2012) at 54. During a pretrial police interview, Dedios acknowledged that she and SR "did have sex." RP (Feb. 22, 2012) at 32. She clarified that she and SR had "[v]aginal intercourse." RP (Feb. 22, 2012) at 32.

The State relied on two incidents to prove that Dedios communicated with a minor for immoral purposes. First, it presented evidence that, at some point during June or July 2009, Dedios approached SR while he used her home computer. SR told Dedios that DB had a Myspace page. When Dedios bent to look at the computer, SR placed his hand under her clothing. Dedios later told the police that SR groped her breasts and vagina for up to 30 minutes. At trial, Dedios testified that she remained at the computer because she believed only SR could access DB's Myspace page. She acknowledged, "He was just grabbing me all over, putting his hand in my shirt and my pants." RP (Feb. 22, 2012) at 168. SR testified that Dedios initiated contact by kissing him. RP (Feb. 16, 2012) at 52.

Second, the State presented evidence that, during the same period, Dedios angrily confronted SR near a public park after learning that he also had sex with DB. SR put his head on Dedios's shoulder and said he was "really sorry." RP (Feb. 22, 2012) at 158. The two began to kiss. During a pretrial police interview, Dedios

acknowledged that she and SR subsequently kissed in her car. She told police that SR put his hand down her blouse and placed his hand on her breasts.

A jury convicted Dedios of communicating with a minor for immoral purposes. It could not reach a verdict on the charge of second degree child rape, and it acquitted Dedios on the charge of third degree child rape. The court imposed a 364-day sentence with all but 60 days suspended. Dedios appeals her conviction.

## ANALYSIS

Under RCW 9.68A.090(1), "a person who communicates with a minor for immoral purposes" is guilty of a crime. The term "communicate" encompasses "'conduct as well as words . . . .'" State v. Hosier, 124 Wn. App. 696, 704, 103 P.3d 217 (2004) (quoting State v. Pietrzak, 100 Wn. App. 291, 295, 997 P.2d 947 (2000)). The victim need not understand the sexual nature of the communication. Hosier, 157 Wn.2d at 13. The phrase "immoral purposes" includes but is not limited to "'participation by minors in sexual acts for a fee, or appearance on film or in live performance while engaged in sexually explicit conduct.'"[1] State v. Jackman, 156 Wn.2d 736, 748, 132 P.3d 136 (2006) (quoting State v. McNallie, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993)). The phrase "incorporates within its scope a relatively broad range of sexual

---

[1] Dedios argues that the State had to prove beyond a reasonable doubt that she "acted with the actual purpose or motive of enticing the child to engage in unlawful sexual activity in order to achieve [her] own commercial gain or personal gratification." Br. of Appellant at 15. The chapter containing RCW 9.68A.090 contains a legislative finding stating, "The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children." RCW 9.68A.001. But no controlling authority holds that "commercial gain" or "personal gratification" is an element of the offense under RCW 9.68A.090.

conduct involving a minor." Jackman, 156 Wn.2d at 748. Here, the trial court defined "immoral purposes" as "immoral purposes of a sexual nature."

Dedios contends that the State presented insufficient evidence that she "affirmatively convey[ed] any sort of offer or enticement" to SR. Br. of Appellant at 18. She also contends that the State failed to prove that she "acted with the predatory purpose of gratifying her sexual desires." Br. of Appellant at 15. In essence, she challenges the State's proof supporting the jury's finding of both "communication" and "immoral purposes" under RCW 9.68A.090. Her arguments are unpersuasive.

"A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it." State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). Evidence is sufficient if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). Circumstantial and direct evidence carry equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). "Credibility determinations are for the trier of fact and are not subject to review." State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Accordingly, we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." Thomas, 150 Wn.2d at 874-75. We will reverse a conviction "only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt." State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005).

The evidence viewed in the light most favorable to the State establishes that SR fondled Dedios's breasts and vagina while Dedios attempted to view DB's Myspace page. Dedios argues, "The only reason why [I] did not move away was because [I] wanted to see DB's MySpace page and believed [I] could not access it without SR's assistance." Br. of Appellant at 16. But Dedios admitted that SR touched her for up to 30 minutes. This fact, viewed in the context of Dedios's ongoing sexual relationship with SR, supports a reasonable inference that Dedios purposefully invited SR to touch her intimate body parts. The State also presented evidence that SR touched Dedios's breast while the two kissed in Dedios's car. This incident occurred shortly after Dedios confronted SR about his sexual relationship with DB. That confrontation ended with Dedios and SR kissing in a public park. Given the context, the trier of fact could reasonably infer that Dedios purposefully invited SR to touch her breast and kiss her in a sexual manner. Based on either of these incidents, a rational trier of fact could determine beyond a reasonable doubt that, through her conduct, Dedios communicated with SR for immoral purposes of a sexual nature.

Dedios argues that, at most, she "passively allowed [SR] to touch her." Br. of Appellant at 18-19. Regarding the Myspace incident, she testified at trial that nothing in her behavior conveyed to SR that it was "okay" to touch her. RP (Feb. 22, 2012) at 169. She also testified, "I told him to stop it and to let me see the My Space and to quit." RP (Feb. 22, 2012) at 168. Regarding the incident at the park, she testified, "I just let it happen." RP (Feb. 22, 2012) at 159. She also stated during a pretrial police interview that, while in the car, she grabbed SR's hand and told him "no." Ex. 5, at 26. During closing arguments, defense counsel argued that Dedios was a "passive, submissive

woman who has been taught all her life to yield to men." RP (Feb. 29, 2012) at 72. He concluded, "There was nothing sexual about what Norma was doing. It was all [SR]." RP (Feb. 29, 2012) at 68. The jury implicitly rejected defense counsel's version of the evidence. When reviewing a sufficiency challenge, we do not reweigh the evidence or reevaluate witness credibility. Thomas, 150 Wn.2d at 874-75.

Our review of the record shows that the evidence, viewed in the light most favorable to the State, was sufficient to sustain Dedios's conviction.

We affirm.

WE CONCUR: