IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50028-1-II |
| Respondent, | |
| v. | |
| VERNICE M. MORRIS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Vernice Morris appeals his convictions and sentence for one count of first degree child molestation and one count of communicating with a minor for immoral purposes. Morris argues that insufficient evidence supports his convictions, and that the trial court erred by imposing an exceptional sentence. We affirm Morris's convictions and sentence.

FACTS

I. BACKGROUND

In 2016, Morris lived in a trailer on a large 13-acre property. F.S.H, who was six at the time, and her mother also lived on the property in a separate house. F.S.H's mother was a caretaker on the property, and cooked food for the residents, including Morris. The property was secluded, and no other children besides F.S.H. lived on the property. F.S.H.'s mother and father were separated, but F.S.H. had regular visitations with her father.

F.S.H. spent time alone with Morris, both in his trailer and elsewhere on the property. F.S.H. would sometimes spend time with Morris two to three times a week. F.S.H. and Morris would play games, learn about things such as magnets, and feed animals on the property together. Morris also provided transportation for F.S.H. and her mother.

In September 2016, F.S.H. told her father that Morris tried to touch her vagina and that Morris asked to see her vagina. F.S.H.'s father reported the incident to the Gray Harbor County Sheriff's office.

During a recorded forensic interview, F.S.H disclosed that Morris tried touching her "loochie" which was the term that F.S.H. used to describe her vagina. 2 Verbatim Report of Proceedings (VRP) (Jan. 11, 2017) at 223. F.S.H. stated that Morris touched her vagina over her clothing while she was in his trailer. F.S.H. also demonstrated how Morris touched her by moving his index finger up and down.

Thereafter, officers arrested Morris and conducted an initial interview at the Sheriff's office. During the interview, Morris admitted that he knew F.S.H. and her mother and that F.S.H. would come over to his trailer during the day. Morris initially denied touching F.S.H. and signed a partial statement admitting to having a conversation with F.S.H. earlier on the day of the incident about pictures of women in a calendar wearing "skimpy bathing suits." Ex. 1 (Jan. 5, 2017). Morris also stated that the pants F.S.H. was wearing on the day of the incident were mesh "see[-]through" and that Morris could see F.S.H.'s underwear. Ex. 1 (Jan. 5, 2017).

Morris later signed another statement saying that F.S.H. had been in his trailer "playing around like little kids do" and that F.S.H. began moving around his trailer "seductively" and that

2

she was always moving around seductively. Ex. 3 (Jan. 5, 2017). Morris admitted that he touched F.S.H.'s vagina through her clothing and that F.S.H. pushed his hand away and said "don't or stop." Ex. 3 (Jan. 5, 2017).

The State charged Morris with first degree child molestation and communicating with a minor for immoral purposes. The State also alleged the aggravating factor that Morris used his position of trust to facilitate the commission of his crimes.

## II.  TRIAL

At trial, the witnesses testified to the above facts. F.S.H.'s mother testified that Morris was F.S.H.'s "friend" and that F.S.H. would spend time with Morris two or three times per week. 1 VRP (Jan. 10, 2017) at 205. F.S.H.'s mother further testified that she had a lot of "love and respect" for Morris and that she fed him three meals a day. 1 VRP (Jan. 10, 2017) at 206.

F.S.H also testified at trial and stated that she sometimes spent time in Morris's trailer and that Morris was her friend. F.S.H. testified that she played games with Morris and that he came to her house for dinner. F.S.H. also testified that one day while she was in Morris's trailer, Morris tried to touch her "inappropriate" and pointed to her pelvic area. 2 VRP (Jan. 11, 2017) at 232. F.S.H. testified that Morris asked to see her vagina but that she said "no." 2 VRP (Jan. 11, 2017) at 233.

During trial, the recording from F.S.H.'s forensic interview was played for the jury and entered into evidence. Morris's signed written statements to police were also entered into evidence.

Morris also testified at trial. Morris testified that F.S.H. would come over to visit him "[q]uite often" and would talk with him, draw pictures, and play with magnets. 2 VRP (Jan. 11, 2017) at 322. Morris further testified that he had no physical contact with F.S.H. and did not touch her inappropriately. Morris also testified that he did not read the statement prepared during the interview with police, but that he signed the statement anyway.

The jury convicted Morris of attempted first degree child molestation and of communicating with a minor for immoral purposes. The jury also entered a special verdict finding an aggravating factor that Morris used a positon of trust to facilitate his crimes.

### III. SENTENCING

Based on the jury's finding of the aggravating factor, the court gave Morris an exceptional sentence. The trial court entered findings of fact and conclusions of law in support of the exceptional sentence. The court found that "[t]he jury unanimously found beyond a reasonable doubt that the defendant committed Attempted Child Molestation in the First Degree with the following aggravating factor: That the Defendant used his position of trust to facilitate the commission of the crime." Clerk's Papers (CP) at 176. The court concluded that the "facts found by the jury in the special verdict form are substantial and compelling reasons justifying an exceptional sentence for the crime." CP at 178. Morris now appeals his convictions and sentence.

### ANALYSIS

Morris argues that insufficient evidence supports his convictions for attempted first degree child molestation and communicating with a minor for immoral purposes. Morris further

argues that the trial court erred by imposing an exceptional sentence based on the jury's finding that he used his position of trust to facilitate the commission of his crimes. We disagree.

## I. SUFFICIENCY OF THE EVIDENCE

### A. *Sufficiency of the Evidence Principles*

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106. We also "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

### B. *Attempted First Degree Child Molestation*

Morris argues that the State failed to produce sufficient evidence that he committed an act that constituted a substantial step toward "sexual contact" with F.S.H. Br. of App. at 17. Morris specifically asserts that the State did not prove that he took a substantial step toward sexual contact and that the State did not prove that he had the intent to touch F.S.H. for the purposes of sexual gratification. We disagree.

RCW 9A.44.083(1) defines the crime of first degree child molestation and prohibits sexual contact with someone who is less than twelve years old and not married to the person, and who is at least thirty-six months younger than the person. To convict Morris of attempted first degree child molestation, the State had to prove, beyond a reasonable doubt, that Morris, did an act that was a substantial step toward the commission of the crime of first degree child molestation, and that the act was done with the intent to commit first degree child molestation. The court also instructed that a substantial step is conduct which strongly indicates a criminal purpose and which is more than mere preparation.

An essential element of the crime of child molestation is "sexual contact." RCW 9A.44.083(1). "Sexual contact" is a touching of sexual or other intimate parts "for the purpose of gratifying sexual desire." RCW 9A.44.010(2). Thus, to prove child molestation, the State must prove that the defendant acted with the purpose of sexual gratification. *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006). Proof that an unrelated adult with no caretaking function has touched the intimate parts of a child supports the inference the touching was for the purpose of sexual gratification. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009). Courts do, however, require additional proof of a sexual purpose when the touching occurs over clothes covering the intimate part. *Harstad*, 153 Wn. App. at 21.

The evidence presented in this case is sufficient to establish that Morris took a substantial step toward sexual contact with F.S.H. F.S.H testified that Morris tried to touch her "inappropriate," and the jury saw F.S.H point to her pelvic area. VRP (Jan. 11, 2017) at 232. Evidence included a video recording of F.S.H.'s forensic interview where she stated that Morris

touched her and where she demonstrated how Morris had touched her by moving his finger up and down. Morris's signed statement included his confession to touching F.S.H. on her vagina over her clothing. Morris points to his testimony at trial that he did not touch F.S.H. inappropriately, and F.S.H.'s testimony that Morris "only" reached between her legs to support his argument. But we view the evidence in the light most favorable to the State, and we defer to the trier of fact on issues of credibility of the witnesses and the weight of the evidence. *Homan*, 181 Wn.2d at 105; *Thomas*, 150 Wn.2d at 874-75.

Morris next argues that the State failed to prove that he had the intent to touch F.S.H. for the purposes of sexual gratification. He likens his case to *State v. Powell*, in which Powell had hugged a girl around the chest as she was seated on his lap and placed his hand on the front and bottom of her underpants, as he assisted her off of his lap. 62 Wn. App. 914, 916, 816 P.2d 86 (1991). Powell also momentarily touched the girl's thighs on the outside of her clothing while they were alone in his truck. *Powell*, 62 Wn. App. at 916. The *Powell* court held the contacts were insufficient to show Powell touched the girl for the purpose of sexual gratification. *Powell*, 62 Wn. App. at 917-18. The court noted the evidence against Powell was "equivocal" and only suggested a "fleeting touch" over clothing. *Powell*, 62 Wn. App. at 917-18.

But *Powell* does not help Morris. Here, unlike the defendant in *Powell*, Morris's touching of F.S.H. was not equivocal. Morris touched F.S.H.'s vagina over her clothing, while moving his finger up and down. Morris specifically asked to see F.S.H's vagina. Moreover, Morris discussed a calendar containing photos of women in bathing suits with F.S.H., described her clothing as "see[-]through" and signed a statement that F.S.H. was moving around

"seductively." Ex. 3 (Jan. 5, 2017). This evidence is sufficient to convince any rational trier of fact that the State proved beyond a reasonable doubt Morris's purpose to gratify sexual desire.

Viewing the evidence in the light most favorable to the State, the evidence presented at trial is sufficient to support Morris's conviction for attempted first degree molestation of a child.

C.      *Communicating with a Minor for Immoral Purposes*

Morris also argues that the State failed to present sufficient evidence to establish that he committed the crime of communicating with a minor for immoral purposes. Morris asserts that he did not encourage or invite F.S.H. to engage in a particular sexual act but rather only asked to see F.S.H.'s vagina, and that no reasonable jury could have concluded that his request was made with "serious and actual intent to promote F.S.H.'s involvement in sexual misconduct." Br. of App. at 22. We disagree.

A person commits the crime of communicating with a minor for immoral purposes when that person communicates with a minor for immoral purposes of a sexual nature. RCW 9.68A.090. The crime of communicating with a minor for an immoral purpose is intended to prohibit "communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993). Courts have construed "communicate" in context of the crime to include "conduct as well as words." *State v. Hosier*, 157 Wn.2d 1, 11, 133 P.3d 936 (2006) (quoting *State v Pietrzak*, 100 Wn. App. 291, 294-95, 997 P.2d 947 (2000)).

Here, there is sufficient evidence in the record to permit a rational trier of fact to find beyond a reasonable doubt that Morris communicated with F.S.H. for purposes of a sexual

nature. Morris asked F.S.H. to see her vagina, he discussed pictures of women in bathing suits, and he touched F.S.H. over her clothing. Morris's conduct in conjunction with his communications to F.S.H., clearly show a sexual nature and show intent to have F.S.H. engage in sexual misconduct.

Viewed in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Morris communicated with F.S.H. for the "predatory purpose of promoting [her] exposure to and involvement in sexual misconduct." *McNallie*, 120 Wn.2d at 933. Accordingly, we hold that the State presented sufficient evidence to support Morris's convictions for attempted first degree child molestation and for communicating with a minor for immoral purposes.

## II. EXCEPTIONAL SENTENCE

Morris argues that the trial court erred in imposing an exceptional sentence. Morris asserts that insufficient evidence supports the jury's special verdict on the position of trust aggravating factor. We disagree and hold that sufficient evidence supports the jury's verdict on the aggravating factor, and therefore the trial court did not err in imposing the exceptional sentence.

We review a jury's special verdict finding under the sufficiency of the evidence standard. *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Homan*, 181 Wn.2d at 105. We assume the truth of the State's evidence and draw all reasonable

inferences from the evidence in favor of the State. *Homan*, 181 Wn.2d at 106. We defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

Under the Sentencing Reform Act of 1981, a trial court must impose a sentence within the standard range for a given offense. *State v. Jennings*, 106 Wn. App. 532, 555, 24 P.3d 430 (2001). However, a court may impose an exceptional sentence above the standard range if it finds "substantial and compelling reasons" for doing so. RCW 9.94A.535; *State v. Davis*, 146 Wn. App. 714, 719, 192 P.3d 29 (2008). We review the trial court's reasons for imposing an exceptional sentence de novo. *Stubbs*, 170 Wn.2d at 124.

To determine whether an aggravating factor supports departure from the standard sentencing range, we apply a two-part test: "(1) The trial court may not base an exceptional sentence on factors the Legislature necessarily considered in establishing the standard sentencing range; and (2) the aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *Jennings*, 106 Wn. App. at 555. Factors inherent in the crime, because they were necessarily considered by the Legislature, may not be relied on to justify an exceptional sentence. *Ferguson*, 142 Wn.2d at 648.

An abuse of a position of trust is a valid aggravating factor to support an exceptional sentence in crimes relating to sexual assault. RCW 9.94A.535(3)(n); *State v. Grewe*, 117 Wn.2d 211, 216-17, 813 P.2d 1238 (1991). The two relevant factors a sentencing court considers in determining whether a defendant violated a position of trust are "the duration and the degree of the relationship" between the perpetrator and the victim. *Grewe*, 117 Wn.2d at 218. "A

relationship extending over a longer period of time, or one within the same household, would indicate a more significant relationship, such that the offender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence." *Grewe*, 117 Wn.2d at 219 (quoting *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987)).

Here, the jury returned a special verdict determining that Morris used his position of trust to facilitate the commission of the crimes. At trial, the State presented evidence showing that Morris lived on the same property as F.S.H., who was 6 years old at the time, and that F.S.H. considered Morris to be her friend. F.S.H.'s mother would cook meals for Morris, and Morris provided transportation for the family and sometimes would eat dinner at F.S.H.'s home. The State also presented evidence that F.S.H.'s mother allowed F.S.H. to spend considerable amounts of time alone with Morris in his trailer and that the abuse occurred in Morris's trailer.

Viewed in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Morris used his position of trust to commit communication with a minor for immoral purposes and attempted first degree child molestation of F.S.H. Accordingly, we hold that there was sufficient evidence to support the jury's special verdict, and that the trial court did not err in finding that the aggravating factor supported Morris's exceptional sentence.

### ATTORNEY FEES AND COST

Morris also asks us to deny appellate costs if he does not prevail on appeal because the trial court deemed him indigent. The State defers the decision to waive costs to this court based to Morris's indigence. We grant Morris's request to waive appellate costs.

No. 50028-1-II

We affirm Morris's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, C.J.

_____
Melnick, J.