# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 56032-1-II |
| MICHAEL ANTHONY FEOLA, | |
| Petitioner, | UNPUBLISHED OPINION |

PRICE, J. — In his personal restraint petition (PRP), Michael Feola challenges his convictions for attempted first degree rape of a child, attempted second degree rape of a child, commercial sexual abuse of a minor, and communicating with a minor for immoral purposes. Feola argues that (1) the State presented insufficient evidence to sustain his convictions, (2) the trial court erred in refusing to instruct the jury on the entrapment defense, and (3) he received ineffective assistance of counsel.[1]

We disagree and deny Feola's petition.

## FACTS

### I. BACKGROUND

On October 15, 2017, Feola was arrested during an operation run by the Missing and Exploited Children Task Force (MECTF). MECTF performs proactive operations designed to identify people who are looking to commit sexual assault crimes against children. Using

---

[1] After the State filed a response to Feola's petition, this court stayed the petition pending our Supreme Court's decision in *State v. Arbogast*, 199 Wn.2d 356, 506 P.3d 1238 (2022). Following *Arbogast*, this court lifted the stay and appointed counsel.

undercover personas and sites like Craigslist, MECTF poses as adults providing children for sex acts or runaway children seeking sex with adults.

Following Feola's arrest, the State charged him with attempted first degree rape of a child (count I), attempted second degree rape of a child (count II), attempted commercial sexual abuse of a minor (count III), and communication with a minor for immoral purposes (count IV).

## II. EVIDENCE AT TRIAL

At Feola's trial, the State introduced testimony and evidence explaining the operation and its involvement with Feola. MECTF posted an advertisement on the casual encounters section of Craigslist, the title of which stated, "Crazy and young. Looking to explore, dash, W4M, which means 'women for men.' " 6 Verbatim Rep. of Proc. (VRP) at 656. The text of the advertisement read, "Bored and home alone . . . been watching videos all day. Really looking to meet a clean ddf [disease and drug free] guy that can teach me what it's like to be an adult. Hmu [hit me up] if interested . . . I'm lots of fun." Clerk's Papers (CP) at 198 (first alteration in original).

Over the next several days, an undercover Washington State Patrol detective answered responses to the advertisement by posing as "Sam," a fictitious 13-year-old girl.[2] Soon, Feola answered the advertisement and exchanged almost 500 hundred text messages back and forth with the detective posing as "Sam." The text messages showed that Feola initially responded to the Craigslist advertisement with his cell phone number and requested to be called "daddy."

---

[2] The advertisement posted by the MECTF did not explicitly mention that "Sam" purported to be a 13-year-old girl; Craigslist had a policy that required persons to be 18 years of age or older to post advertisements.

CP at 323. "Sam" replied and said she was 13 years old, sending Feola a photo of herself and an 11-year-old friend, named "Anna."[3]

The texts soon turned to discussions of the ages of the two girls and potential sexual acts. In response to the photograph that "Sam" sent him, Feola asked, "How old -- excuse me -- you are how old?" 6 VRP at 665. "Sam" again told Feola that she was 13 years old, and Feola responded, "We can talk. I am 44." 6 VRP at 666. "Sam" asked Feola, "What kind of fun are you into? I am pretty open. Sometimes that scares guys. Threesomes?" 6 VRP at 666. In response, Feola asked who the threesome would be with, and "Sam" stated that it would be with her and "Anna," the "girl in the back of the pic" who was 11 years old, and asked if that was okay. 6 VRP at 666. Feola responded, "Maybe. Any other friends. Maybe older?" 6 VRP at 666. "Sam" responded that all her friends were around her age. Feola told "Sam" that he "want[ed] to play with you two so bad." 6 VRP at 671. On the same day that the text exchange began, Feola sent "Sam" a photograph of his penis. As the hundreds of text exchanges progressed, Feola graphically described numerous sex acts that he wanted to perform with "Sam" and "Anna."

"Sam" repeatedly asked Feola to bring gifts to her and "Anna." At various times, Feola responded, "I will try," "I will take care of my girls. Don't worry," "When we all get together I will take care of you two," "I might be able to do $25 . . . So if we meet on Tuesday I will have a present for you." 6 VRP at 682, 689, 711-12.

Feola told "Sam" on several occasions that he suspected she was a cop because she would not send him a nude photograph. For example, Feola said, "I am just getting leery because you

---

[3] The individuals in the photo were actually two female law enforcement officers, but a Snapchat filter was used to obscure their faces.

won't send a pic. If I show up, and it's a sting, we don't have to be naked for me to be in trouble." 6 VRP at 676. Later he said, "A cop can't send nude pics," "If you're not a cop then send some pics," "Send pics to prove you're not a cop," "I am trusting that you are not a cop. Why can't you sneak out tomorrow? We play in the truck," "Now I am starting to get nervous about the situation because now you are starting to sound like a cop," "I need you to prove to me you are not a cop." 6 VRP at 699-700, 706. Nevertheless, Feola continued his sexually explicit messages despite his suspicions.

Eventually, the detective decided to have Feola go to a predetermined location to ascertain whether Feola was serious about meeting with the children. Feola was directed to go to a specific 7-Eleven and send "Sam" his picture before she would give him the address where she was. Following this exchange, there was a nearly 24 hour break in communication.

Feola reinitiated contact with "Sam" and sent her the photograph that she requested of him at the 7-Eleven. There was another break in communication—this time lasting more than a day.

Then, Feola reinitiated contact again with "Sam" saying, "Good morning, baby girl. We need to talk, please." 6 VRP at 707-708. Feola continued,

> If we make an attempt to meet, then we need to meet. You need to understand where I am coming from. If you were a cop I would be spending a lot of time in jail. I would also lose my family and everything that I have worked for. I just need to make sure you are not a cop. Like I said before, please stick around, and let's meet on Tuesday.

6 VRP at 709-10.

The two made a plan to meet in person. Feola drove to "Sam's" location provided to him by the detective, went into the house, and was immediately arrested by law enforcement. In Feola's car, law enforcement recovered a bottle of lubricant, $250 in cash, a cell phone, and his

4

wallet. At the time of his arrest, Feola made inconsistent statements about his intent, first suggesting he thought it was only fantasy but later admitting he was interested in sex acts with "Sam."

Feola did not testify at trial.

III. ENTRAPMENT JURY INSTRUCTION REQUEST

Feola requested a jury instruction for the defense of entrapment. In its consideration of Feola's request, the trial court noted the uncertainty of whether Feola denied or admitted committing the offenses. The trial court said,

> Entrapment has to do with the unfair inducement to commit a crime that a person wouldn't otherwise have committed. If it is … ["]I didn't go there with the intent to have sex with the kid,["] then that's denial[,] [i]t's not entrapment.

7 VRP at 823-24. Given that Feola made inconsistent statements at the time of his arrest about his motivations, the trial court ultimately decided that if Feola's post-arrest statements were admitted, it would give the entrapment instruction.

When the State decided not to seek admission of those statements, the trial court declined to give the instruction. In its ruling, the trial court did not mention what burden of production it may have been applying in denying the entrapment instruction request.[4]

IV. VERDICT AND POST-VERDICT PROCEDURE

Following deliberation, the jury found Feola guilty of all charged counts.

---

[4] The State appeared to have conflated the burden of proof with the burden of production in its arguments to the trial court below, mentioning preponderance of the evidence as the standard to receive an entrapment instruction. Feola did not address the burden of production in his arguments below.

Feola appealed. The only issue raised on direct appeal was a scrivener's error on the judgment and sentence, which this court ordered be corrected. *State v. Feola*, No. 53199-2-II (Wash. Ct. App. Aug. 18, 2020) (unpublished).[5]

Feola then filed this timely PRP.[6]

## ANALYSIS

### I. PERSONAL RESTRAINT PETITIONS

Because relief by way of a collateral challenge through a PRP is extraordinary, the petitioner must meet a high standard before this court will disturb an otherwise settled judgment. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). The petitioner must make a prima facie showing of either (1) a constitutional error that resulted in actual and substantial prejudice or (2) a nonconstitutional error that constituted a fundamental defect that inherently results in a complete miscarriage of justice. *In Pers. Restraint of Yates,* 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *see also In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113-114, 357 P.3d 668 (2015) ("If the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect, we deny the personal restraint petition."). To demonstrate actual and substantial prejudice, the petitioner has the burden to show that the outcome would more likely than not have been different had the alleged error not occurred. *In re Pers. Restraint of Davis*, 200 Wn.2d 75, 86, 514 P.3d 653 (2022). Merely showing that an error created a

---

[5] https://www.courts.wa.gov/opinions/pdf/D2%2053199-2-II%20Unpublished%20Opinion.pdf.

[6] Generally, petitions for a collateral attack may be timely filed within one year of the judgment becoming final. RCW 10.73.090(1). Feola's appeal became final on October 23, 2020, and he filed his PRP within one year on August 6, 2021.

*possibility* of prejudice is insufficient to warrant collateral relief. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-17, 440 P.3d 978 (2019).

II. SUFFICIENCY OF THE EVIDENCE

Feola argues that each of his convictions are based on insufficient evidence because the State failed to produce an actual person as his victim. We disagree.

A. LEGAL PRINCIPLES

We review challenges to the sufficiency of the evidence by considering whether any rational trier of fact, in viewing the evidence in the light most favorable to the State, could find the essential elements of the crime beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

To prove attempted first degree rape of a child, the State must prove that the defendant intended to have sexual intercourse and took a substantial step toward having sexual intercourse with a child under the age of 12. RCW 9A.28.020(1), 9A.44.073(1); *State v. Wilson*, 1 Wn. App. 2d 73, 83, 404 P.3d 76 (2017). And to prove attempted second degree rape of a child, the State must prove that the defendant intended to have sexual intercourse and took a substantial step toward having sexual intercourse with a child over the age of 12 but younger than 14. RCW 9A.28.020(1), 9A.44.076.

Commercial sexual abuse of a minor is the exchange of anything of value as compensation for "sexual conduct" with a minor. RCW 9.68A.100(1). To prove attempted commercial sexual abuse of a minor, the State must prove that the defendant intended that criminal result and took a substantial step toward accomplishing it. RCW 9A.28.020(1). And to prove communication with a minor for immoral purposes, the State must prove that the defendant communicated with someone the defendant believed to be a minor for immoral purposes of a sexual nature and the communication was through the sending of an electronic communication. RCW 9.68A.090.[7]

"Any slight act done in furtherance of a crime constitutes an attempt if it clearly shows the design of the individual to commit the crime." *State v. Price*, 103 Wn. App. 845, 852, 14 P.3d 841 (2000), *review denied*, 143 Wn.2d 1014 (2001).

B. APPLICATION

Feola claims that insufficient evidence supports his four convictions because only fictitious, and not real, children were involved. This claim fails.

Feola's overarching claim is that the State somehow did not prove its case merely because Feola was not communicating with an actual child. But none of the crimes that Feola was convicted of required the State to prove that real, and not fictitious, children were the victims. And our Supreme Court, in *State v. Johnson*, 173 Wn.2d 895, 270 P.3d 591 (2012), has held that a defendant who intends to have sexual intercourse with a fictitious underage child and takes a substantial step in that direction can be convicted of attempted rape of a child.

---

[7] The statute is designed to prohibit communication with children " 'for the predatory purpose of promoting their exposure to and involvement in sexual misconduct.' " *State v. Hosier*, 157 Wn.2d 1, 9, 133 P.3d 936 (2006) (quoting *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993)).

Without the requirement for the involvement of a real child, sufficient evidence supports each conviction when viewed in the light most favorable to the State. With respect to his convictions for attempted first and second degree rape for counts I and II, the text messages show that Feola thought that "Sam" and "Anna" were real children, he intended to have sex with them, and he took a substantial step to do so. "Sam" represented to Feola that she was 13 years old and "Anna" was 11 years old. And Feola drove to the address where he thought he was going to meet the girls. When all this evidence and reasonable inferences are construed in favor of the State, a rational trier of fact could determine that Feola intended to have sexual intercourse and took a substantial step toward having sexual intercourse with children meeting the age requirements of the two crimes.

As for his conviction for attempted commercial sexual abuse of a minor, the text messages show that Feola agreed to bring the girls some gifts or money when he met them ("I will try," "I will take care of my girls. Don't worry," "When we all get together I will take care of you two," "I might be able to do $25 . . . So if we meet on Tuesday I will have a present for you."). 6 VRP at 682, 689, 711-12. Making that agreement and bringing the money constituted a substantial step towards committing the crime. Construing the evidence and all reasonable inferences in a light most favorable to the State, a rational trier of fact could conclude that Feola agreed to provide gifts to "Sam" and "Anna" and, in return, they would engage in sex with him.

Finally, through the hundreds of text messages discussed above, there was clearly sufficient evidence to support Feola's conviction for communicating with a minor for immoral purposes.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that Feola was guilty of each of his convictions. Accordingly, Feola's sufficiency of the evidence claim fails.

III. ENTRAPMENT INSTRUCTION

Feola next argues his PRP should be granted because the trial court abused its discretion in refusing to instruct the jury on the defense of entrapment because there was *some* evidence of the elements of the defense. Feola further argues that he was actually and substantially prejudiced by the trial court's failure to instruct on entrapment. We disagree.

A. LEGAL PRINCIPLES

1. Standard of Review

If the trial court's refusal to provide a requested jury instruction is based on a ruling of law, this court reviews the trial court's refusal de novo. *State v. Arbogast*, 199 Wn.2d 356, 365, 506 P.3d 1238 (2022). However, if the refusal to give an instruction is based on factual reasons, this court reviews the decision for an abuse of discretion. *Id.*

2. Entrapment Defense

Washington's entrapment statute provides that:

(1) In any prosecution for a crime, it is a defense that:

(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

RCW 9A.16.070. Defendants are required to prove entrapment by a preponderance of the evidence. *Arbogast,* 199 Wn.2d at 366. But the quantum of proof for a defendant to be entitled to the instruction is the lesser standard of "some evidence" of the required elements. *Id.* at 370, 373 n.5 (Supreme Court clarified this has always been the standard to be entitled to the instruction).

### B. APPLICATION

Feola argues that he was entitled to an entrapment instruction because there was some evidence of both required elements, including the second element—that he was lured or induced and that he was not predisposed to commit the crime. Citing to our Supreme Court's recent decision in *Arbogast*, Feola claims that the trial court abused its discretion by, in part, tying the entrapment instruction to the admission of Feola's post-arrest statements.

Assuming, without deciding, that the trial court erred by failing to give the entrapment instruction, Feola must still show actual and substantial prejudice. *See Meippen*, 193 Wn.2d at 315-17 (actual and substantial prejudice standard is higher than "some evidence"). This means Feola must show it is more likely than not that the jury would not have found him guilty of the charged crimes if the instruction had been given. *Davis,* 200 Wn.2d at 86.

Feola simply claims that because entrapment is a complete defense to the charged crimes, it is more likely than not that had the jury been properly instructed, they would not have found him guilty. But he makes no attempt at demonstrating how the instruction would have influenced the jury's decision, especially in the face of strong evidence of guilt from the State. Indeed, throughout his numerous texts, Feola shows a predisposition to commit the crimes, not the opposite. For example, Feola repeatedly expressed concern that "Sam" might actually be law enforcement, but still engaged in the behavior—showing deliberateness notwithstanding his perception of the risk.

11

In the face of such strong evidence, an entrapment instruction would not likely have been helpful to him. Feola has established at most a mere possibility of prejudice arising from the trial court's failure to instruct the jury on entrapment, and that is not enough. *Meippen*, 193 Wn.2d at 315-17 (actual and substantial prejudice is not established where there is only a possibility of prejudice).

Therefore, even if the trial court erred by failing to give the instruction, we hold that Feola is not entitled to collateral relief on this claim because he did not establish that he was actually and substantially prejudiced.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Feola next makes two arguments that he received ineffective assistance of counsel, (1) his counsel failed to argue that the evidence was sufficient for an entrapment instruction, and (2) his counsel failed to offer admissible evidence of his lack of criminal history. We disagree.

### A. LEGAL PRINCIPLES

We review ineffective assistance of counsel claims de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021). To show ineffective assistance of counsel, a petitioner must demonstrate that their attorney's performance was deficient and the deficient performance prejudiced them. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (known as the two-prong *Strickland* test); *Yates*, 177 Wn.2d at 35. Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We strongly presume that counsel's performance was reasonable. *Id.* Generally, counsel's performance is not deficient when counsel's conduct can be characterized as legitimate trial

strategy or tactic. *Id.* A failure to request a particular jury instruction is not deficient performance when the trial court would not have given the instruction. *See State v. Powell*, 150 Wn. App. 139, 154, 206 P.3d 703 (2009).

To show prejudice—the second prong of the *Strickland* test—the petitioner must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021). If a petitioner establishes prejudice under the *Strickland* test, they have necessarily met their burden to show actual and substantial prejudice in the context of a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

B. APPLICATION

Feola contends that his trial counsel was deficient for failing to argue that the record contained sufficient evidence to present the question of entrapment to a jury. He argues that there was no strategic reason for counsel's failure to point the court to the correct standard in determining whether the instruction should be given. Feola claims that trial counsel should have been aware of the correct standard clarified in *Arbogast* because that decision relied on previously established case law.

Feola also contends that his trial counsel failed to offer admissible evidence of his lack of criminal history. This was deficient performance, according to Feola, because his lack of criminal history was admissible and relevant to entrapment.

Feola contends that these errors by counsel prejudiced him because there is a reasonable likelihood that had the jury been presented with all the relevant evidence and instructed on the

elements of entrapment, it would have found by a preponderance of the evidence that Feola was entrapped, and the outcome of the trial would be different.

Here again, assuming, without deciding, that Feola can show deficient performance, he cannot meet the second prong of the *Strickland* test—that he was prejudiced. Beyond conclusory assertions, Feola fails to show there was a reasonable probability (not possibility) that the jury would have found by a preponderance of the evidence that he was entrapped if the jury had been given the entrapment instruction, especially given the strength of the State's case and the relatively weak evidence showing inducement that Feola isolates on appeal. *See Meippen*, 193 Wn.2d at 317 (merely showing that an error created a *possibility* of prejudice is insufficient for collateral relief).

Feola's related argument about his counsel's failure to offer evidence of Feola's lack of criminal history is equally meritless. Even if his counsel had attempted to seek admission of this evidence and was successful, Feola makes no effort to demonstrate a reasonable probability that the outcome of the proceeding would have been different in the face of strong evidence of guilt presented by the State. Therefore, we hold that Feola's ineffective assistance of counsel arguments fail.

## CONCLUSION

Because Feola has not shown he is entitled to collateral relief, we deny his PRP.

14

No. 56032-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

LEE, J.

15